# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **NEWAY ALEMAYEHU** ) | |
|    7996 Avery Park Ct. ) | |
|    Alexandria, VA 22306 ) | |
| ) | |
|      Plaintiff, ) | |
| ) | Civil Action No. 1:16-cv-00596 |
|      v. ) | |
| ) | |
| **BELAY ABERE,** ) | |
|    1208 U Street N.W. ) | |
|    Washington, D.C. 20009 ) | |
| ) | |
| **BEKALU BAYABILE** ) | |
|    1334 W Street N.W. ) | |
|    Washington, D.C., 20009 ) | |
| ) | |
|    and ) | |
| ) | |
| **IYOSSIAS TILAHUN** ) | |
|    1208 U street N.W. ) | |
|    Washington, D.C., 20009 ) | |
| ) | |
|      Defendants. ) | |
| ) | |

_____ )

## COMPLAINT FOR ACCOUNTING, UNJUST ENRICHMENT, PROMISSORY ESTOPPEL, QUANTUM MERUIT, CONSTRUCTIVE TRUST, AND INTENTIONAL MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

COMES NOW Plaintiff herein and complains of Defendants Belay Abere, Bekalu Bayabile, and

Iyossias Tilahun as follows:

## INTRODUCTION

Plaintiff claims that starting in April 2015, the Defendants named herein, Messrs. Abere,

Bayabile and Tilahun have been planning and working in coordination with each other to: (a)

defraud Plaintiff out of his over $460,000 investment in the restaurant enterprise known as __ located at 1208 U Street; (b) terminate him as the restaurant enterprise manager; (c) isolate him from the financial operation of the restaurant enterprise; and (d) unjustly enrich Defendant Abere as a result thereof.

Plaintiff was induced to make that investment based on a signed Assignment and Exchange agreement which required Defendant Abere to assign his existing lease and liquor license to the partnership LLC known as BelayAbere Enterprises LLC. For reasons explained herein, that assignment never took place, and as a result, Plaintiff has been damaged in the amount of $460,000.

Plaintiff alleges that at least $460,000 of his money went towards the purchase price requested by Defendant Abere and for major renovations, back rental obligations accrued by Defendant Abere, current rent payments, tax and insurance, purchase of equipment and furniture, and other expenses including attorney's fees. Plaintiff's financial contributions, his valuable time, his professional advice, and his $460,000 investment converted the dormant business from being literally non-operational to being a successful restaurant enterprise. Defendant Abere was able to accomplish a turnaround for the restaurant only because of the massive financial assistance rendered by Plaintiff to the restaurant enterprise. Besides being stripped his managerial rights and duties, the Defendants have marginalized him in terms of planning activities, avoiding meetings and phone communications, and removing Plaintiff from any financial oversight and planning of the restaurant enterprise. In addition, Defendants are not willing to disclose any information such as financial statements and income and expense accounts.

Fulfilling his role in the conspiracy, Defendant Abere has authorized and approved Defendant Tilahun to become the new manager of the restaurant enterprise. His goal in doing so was to permanently remove Plaintiff from both management and financial operations of the

restaurant enterprise. Defendant Tilahun has actually informed restaurant employees not to communicate with Plaintiff or take orders from him, even going so far as to tell them that they work for Defendant Abere, not for Plaintiff, and that he has no authority in terms of managing the restaurant. Defendant Tilahun's involvement was secured by a promise made to him by Defendant Abere that he would receive a substantial salary and commission-based compensation once Plaintiff was removed from his managerial duties. Defendant Tilahun thus has enabled Defendant Abere to defraud Plaintiff, and in the process deprive him of his managerial duties and oversight privileges in terms of running the restaurant enterprise.

As specifically alleged herein, all Defendants made repeated false and misleading promises to Plaintiff which induced him to originally invest the aforementioned $460,000 in the restaurant venture. While the restaurant venture appears to be an ongoing successful business endeavor, Plaintiff has been effectively removed as manager of the restaurant, and thus at this time he has no means of salvaging his investment in BelayAbere Enterprises, LLC, a D.C. limited liability company, and has been forced to initiate the instant lawsuit as a result.

## PARTIES

1. Plaintiff Neway Alemayehu is domiciled in Alexandria, Virginia and invested approximately $460,000 in a restaurant enterprise that is now controlled by Defendant Abere.

2. Defendant Abere is domiciled in Washington, D.C., and, based upon false assurances and promises, convinced Plaintiff to invest approximately $460,000 in an enterprise over which he has no control over today.

3. Defendant Bayabile is domiciled in Washington, D.C., and also played a role in convincing Plaintiff to invest not less than $460,000 in the restaurant enterprise.

4.   Defendant Tilahun is domiciled in Washington, D.C., and interfered with Plaintiff's

contractual relationship with the restaurant LLC through his position as manager, whereby

he played a vital role in marginalizing Plaintiff from any decision making in restaurant

operations.


**VENUE**

5.   Venue is proper under 28 U.S.C. § 1391 because all of the activity, events, intentional acts,

and omissions complained of herein on the part of the Defendants occurred in this judicial

district.


**JURISDICTION**

6.   Diversity 28 U.S.C. § 1332 is invoked with respect to all Defendants.


**STATEMENT OF FACTS**

7.   In April 2015, Defendants Bayabile and Abere approached Plaintiff about investing in a

restaurant enterprise currently known as Amsterdam Café and Lounge. Defendant Abere

made oral assurances and signed a written agreement stating that Defendant Abere would

transfer the building lease and liquor license to a partnership LLC and that Plaintiff would be

the majority shareholder (80%) and the executive manager of the LLC and the restaurant

enterprise. Plaintiff decided to proceed with investing in the restaurant enterprise based on

those oral and written assurances. The signed agreement also stated that Defendants Abere

and Bayabile would be 5% and 15% shareholders in the LLC, respectively.

8.  In May 2015, the premises became vacant, and substantial construction work was performed over the course of more than three months, all paid for by Plaintiff. This construction work amounted to a "gut job" in industry parlance because a sub-tenant of Defendant Abere had neglected the premises and disappeared after removing everything from the premises, including all kitchen equipment, bar cooling equipment, tables, and chairs.

9.  Based on the ongoing false assurances made by Defendant Abere about transferring the lease and liquor license to their LLC and distributing 80% of the profits to Plaintiff as a return on his investment, Plaintiff continued to invest in the enterprise. He put up additional monies to: (a) pay back rents that Defendant Abere owed the landlord, along with taxes and insurance; (b) pay all legal fees to get the lease and liquor license transferred to the LLC; (c) finish the renovation of the restaurant; (d) replace the HVAC and water heater systems; (e) purchase and install new kitchen equipment; (f) install security and fire alarm systems; and (g) furnish the restaurant with tables, chairs, bar stools, a liquor/wine inventory, and a computerized cash register system. Today it is a first-class establishment in an upscale and vibrant neighborhood (U street corridor) and is, based upon information and belief, a very profitable enterprise.

10. However due to Defendant Abere's poor relationship with the landlord, i.e., his history of being dishonest, not paying rent, and disappearing on her for months at a time, she refused to let him assign the lease to the LLC. Instead, she wanted him to be personally liable. While these negotiations were ongoing, Defendant Abere traveled overseas to East Africa without informing Plaintiff and basically neglected the entire process of assigning the lease and liquor license to their partnership LLC. Meanwhile, Plaintiff worked tirelessly with the LLC's attorneys to persuade the landlord to assign the lease to the partnership, along with the liquor license affidavit. Defendant Abere stayed overseas for nearly three months and was

hardly reachable for communication and collaboration with Plaintiff and attorneys. Plaintiff continued to cover the rent, tax and insurance after finally receiving the assurance from Defendant Abere that he would return shortly to Washington, D.C. and would convince the landlord by reaching out to her attorney.

11. By the end of July 2015, Defendant Abere returned and told Plaintiff and the LLC's attorneys that the only way the landlord could assign the lease to the LLC was if she were presented with an LLC operating agreement which showed Defendant Abere as the only member. Defendant Abere thus requested that Plaintiff be temporarily removed from the membership documents. Neither Plaintiff nor the LLC attorneys believed this to be an acceptable outcome, but the attorneys made the temporary changes until the assignment was accomplished. The operating agreement listed Plaintiff as a manager, along with Defendant Abere.

12. In Mid-August 2015, the attorneys suggested that the only realistic way forward would to temporarily keep the lease, liquor license and business license under Defendant Abere's name and have him sign a binding agreement with the LLC that made the LLC the managing company until Defendant Abere regained the landlord's trust and obtained her permission to transfer the lease, liquor license and business license to the LLC per the signed agreement. Plaintiff, being the 80% shareholder was told that he would be the executive manager, have daily access to financial records, be able to participate in major corporate decisions, and secure the power of attorney from Defendant Abere.

13. In late October 2015, and based on the above plan, the liquor license was transferred to Defendant Abere from his subtenant. However, Defendant Abere again travelled overseas without completing the management agreement, without giving the power of attorney to Plaintiff, and without resolving an ongoing disagreement with Plaintiff regarding the

financial aspect of the management agreement. The business started operating around this time without settling any of these issues.

14. In mid-December 2015, Defendant Abere returned from East Africa, and argued that his superior liability protection and experience required that he take over the management and operation of the business. He told Plaintiff that such a course of action would only be for "a few months," and at the time Plaintiff believed this to be beneficial to the restaurant enterprise as long as management was performed in an inclusive, collaborative way.

15. With time, Defendant Abere's true intentions became clear. Plaintiff requested that Defendant Abere complete the management agreement and sign the power of attorney, even providing him the draft to sign, but Defendant delayed, saying he needed legal advice. Later, he flatly refused to sign it.

16. Defendant Abere continued to undermine Plaintiff's position as 80% member and manager. Defendant Abere hired Defendant Tilahun, who was initially brought in as a consultant at the suggestion of Defendants Abere and Bayabile, as the "general manager" and told him that he had major authority in terms of running the restaurant enterprise, and that he should keep Plaintiff in the dark about those operations. Besides being a direct violation of the LLC agreement, this also endangered Plaintiff's investment further because, based upon information and belief, Defendant Tilahun is a foreign national who does not possess the necessary authorization to work in the United States. Defendant Abere's hiring of Defendant Tilahun thus exposed the restaurant enterprise senior executives, including Plaintiff, to potential liability in case of an Immigration and Customs Enforcement investigation, which could result in closure and loss of Plaintiff's investment.

17. Defendants Abere and Tilahun also continued to operate the business without an Acoholic Beverage Commission (ABC) Licensed manager on site, which is against ABRA's basic rules,

as Defendant Tilahun could not apply for one due to his being an undocumented immigrant. Defendant Tilahun, in addition to being undocumented and inexperienced, had very little people-to-people skills, and as a result the company had very bad restaurant reviews from customers. Plaintiff had repeatedly mentioned that he needs to be the executive manager and that Defendant Tilahun needs to be replaced by a more experienced manager for the above reasons, though Defendant Abere continued to avoid discussing this issue. Defendant clearly wanted Defendant Tilahun to continue being his right hand man to achieve his ambition of being unjustly enriched at the expense of Plaintiff. Plaintiff believes Defendant Tilahun has been promised a salary and commission structure as a reward for keeping Plaintiff in the dark as to restaurant business operations and financial planning, and in general excluding him from the restaurant business. Defendant Tilahun has a long history of securing financial assistance from Defendant Abere, including some of Plaintiff's funds which allowed him to acquire a Mercedes Benz for his own use and enjoyment.

18. Defendant Abere repeatedly told Plaintiff that having Defendant Bayabile as a member would impede the success of the partnership, since he did not have the manner, financial or managerial capacity to be a contributing member of the partnership. Defendant made these statements in order to convince Plaintiff that he was needed for his managerial involvement for the success of the business. However, even after making these statements criticizing Defendant Bayabile, Defendant Abere continued involving him intensively in restaurant planning and operation. Defendant Bayabile, on instructions from Defendant Abere, continued to keep Plaintiff in the dark as to the financial operations of the restaurant enterprise. And, Defendant Abere has continued, up through the filing of this lawsuit, to strengthen his control of the business, its operation and planning, all designed to totally

remove Plaintiff from any involvement or managerial oversight responsibilities for the restaurant enterprise.

19.  After mid December 2015, Defendant Abere changed the bank account of the merchant services to his personal account, without letting Plaintiff know about that change. Based upon information and belief, Defendant Abere forged Plaintiff's signature in order to achieve the change, as the partnership's deposit account was originally set up by Plaintiff. And to this day Defendant Abere has also refused to share financial statements and financial operations data with Plaintiff. Plaintiff, therefore, knows nothing about the financial status of the business despite being the 100% financier of the business. Defendant Abere has avoided all communication, discussions, and request for explanation made by Plaintiff. Defendant Abere has tried to make it appear that he is the legitimate sole owner of the business. Defendant Abere, at all relevant times, was aware that he needed to sign the management agreement along with a power of attorney that would have made Plaintiff the on-site executive manager consistent with the executive operation rights. Defendant Abere continuously avoided doing so, even though he gave repeated oral assurances to Plaintiff that this would be accomplished. Plaintiff would never have committed to funding the restaurant if he had known this would not be the case.

20. Starting in mid-December 2015, the Defendants named herein were able to realize the turnaround of the restaurant business. That would not have happened but for Plaintiff's massive investment, which converted the business from a neglected non-operational one to a vibrant, ongoing restaurant enterprise. They were able to marginalize Plaintiff from any decision making or planning operations. Their goal was to unjustly enrich Defendant Abere at the expense of Plaintiff. Defendant Bayabile who is a brother in law of Defendant Abere continued to work against Plaintiff's interest by totally aligning himself with Defendant

Abere. Defendant Tilahun, a very close friend of Defendant Abere, although not part of the partnership, despite being aware of the partnership contract Plaintiff has with the other Defendants, continued to maliciously interfere with the contractual arrangements based on the partnership contract. Defendant Tilahun even began informing restaurant employees not to take any orders from Plaintiff, and informed them that he works for Defendants Abere and Bayabile. They created an impression among the employees that Plaintiff did not have any control or decision making authority. Defendant Tilahun has also been continuously monitoring the activities of Plaintiff and reporting them to Defendant Abere. Defendant Tilahun has also been purposely badmouthing Plaintiff to all restaurant employees, blaming him to cover up Defendant Abere's poor management and planning decisions.

21. The three Defendants, under the supervision of Defendant Abere, have made numerous executive decisions without informing or engaging Plaintiff in these discussions. These decisions include financial planning and spending, employee hiring and recruiting, making deals with event hosts and other vendors including subleasing the business to another vendor which operates till 4:00 pm every day and not disclosing the contractual details to Plaintiff.

22. After the restaurant opened up in mid-October 2015, Defendant solicited additional funding from Plaintiff, citing overdue rent payments among other things. In early February 2016, Defendant continued to delay making timely rent payments, which caused the landlord to complain. He did so despite the fact that the landlord had made it clear that receiving the rent on time was a prerequisite for her to trust Defendant Abere and assign the lease to the LLC. To secure payment of delinquent rents, Plaintiff contributed $12,200 from his personal account.

23. As more time went by, Plaintiff realized that due to the Defendant's long history of delinquent rent payments, he would never be able to secure the trust of the landlord, and thus cannot secure the transfer of the liquor license to their LLC, which was required by their Assignment and Exchange agreement. At this point, Plaintiff has every reason to believe that Defendant Abere never intended that the lease and licenses would be transferred to the LLC. Instead, Defendant Abere, after realizing the turnaround of the business, continues to act as if he is the legitimate sole owner of the restaurant enterprise, all at the expense and investment of Plaintiff. Defendant Abere has also continued to refuse to sign the binding management agreement and give power of attorney to Plaintiff. All three Defendants have been conspiring and working cohesively towards achieving this goal of unjustly enriching Defendant Abere. At this point, Plaintiff believes that purposes of the Assignment and Exchange agreement are not achievable. Thus, Plaintiff no longer has any control over the success of the venture or the safety of his investment. Plaintiff has attempted, unsuccessfully, to secure repayment of his over $460,000 investment, and that is why he has brought this lawsuit.


## COUNT I: ACCOUNTING
## AGAINST ALL DEFENDANTS

24. Plaintiff repeats and realleges paragraphs 1-23 as if fully stated herein.

25. At this time, even though he has repeatedly sought information on the business accounts details, Plaintiff has been rebuffed by Defendant in all of these efforts. While Plaintiff believes a large part of the funds and returns of the business went to the business operation, rent and utility payments and payroll he has not seen proof thereof. Defendant Abere has

also solicited additional funds and received from Plaintiff.  Thus he brings this count to

secure a complete accounting from Defendant.

WHEREFORE Plaintiff seeks an order from this court which requires Defendant to produce all

bank statements and other financial records, bills re construction activity, rent receipts

concerning premises within 30days of being ordered to do so. Plaintiff would also like the

opportunity to review the books and records of the ongoing restaurant enterprise, and ask that

the Court order this relief as well.

## COUNT II: UNJUST ENRICHMENT
## AGAINST ALL DEFENDANTS

26. Plaintiff repeats and realleges paragraphs 1-25 as if fully stated herein.

27. At all relevant times herein, Plaintiff understood he was to be the major investor in the

    restaurant enterprise. He had no problem with that, as long as he was a partner in the

    enterprise and had hands-on operational control. He wanted to be a manager in the real

    sense, and make sure that his investment was protected and also that the restaurant

    enterprise was successful. As a result of his being terminated as a manager and as a result of

    his inability to inspect the premises and see how the restaurant business is going, he has lost

    approximately $460,000 in this venture.

28. Because Defendant Abere now has an ongoing and successful restaurant and event business

    courtesy of the $460,000 investment made by Plaintiff, Defendant Abere has been unjustly

    enriched in an amount not less than $460,000.

WHEREFORE Plaintiff seeks entry of judgment in the sum of $460,000 plus reasonable interest

and an award of reasonable attorney's fees.

## COUNT III: PROMISSORY ESTOPPEL
## AGAINST ALL DEFENDANTS

29. Plaintiff repeats and realleges paragraphs 1-28 as if fully stated herein.

30. As already noted herein, various promises were made by Defendant which Plaintiff relied on in terms of committing to a $460,000 investment. These promises, in hindsight, turned out to be false and misleading.

31. For example, Defendant never intended that Plaintiff would be an active manager of the restaurant enterprise. After he secured the funding necessary to open the restaurant, he made sure that Plaintiff was removed of all managerial responsibilities and authority.

32. Had Plaintiff known at the time of the representations that were made to him that they were false, misleading, and dishonest in nature, he never would have made the initial investment of $85,000 and he certainly wouldn't have continued to fund the restaurant enterprise in an amount exceeding $460,000. The assurances and promises made by Defendant to Plaintiff were reasonable under the circumstances, so that an ordinary investor would rely on the representations made by Defendant. Plaintiff did rely on those representations much to his financial detriment, i.e., he is out at least $460,000 plus reasonable interest and attorney's fees.

WHEREFORE Plaintiff requests judgment in the amount of $460,000 plus reasonable interest and attorney fees.


## COUNT IV: CONSTRUCTIVE TRUST

33. Plaintiff repeats and realleges paragraphs 1-32 as if fully stated herein.

34. Based on visits to the restaurant and observations from the street as to the successful nature of the business, Plaintiff has every reason to believe the business is successful. It is located in an upscale part of town and has a lot of young, affluent customers in the area.

35. Because he has not seen the books and records, and because Defendant Abere refuses to give him an accounting, he has no idea how profitable the enterprise is. But since he put up the bulk, if not the entirety of the funds necessary for renovation of the premises, ongoing operations, and back rent, all of his investment is directly tied to the restaurant enterprise.

36. Because of the false promises and assurances and outright lies made by Defendant Abere, Plaintiff has no reason to believe Defendant will be returning his $460,000 investment in the near future. Thus, Plaintiff needs a mechanism to ensure that his $460,000 investment will be returned to him in the short term. Based on what Plaintiff knows about Defendant's moral character, Defendant could, for example, flee the country and go back to Ethiopia and never be seen again. Thus, Plaintiff needs the imposition of a constructive trust on the operations of the restaurant to ensure that his $460,000 investment will be protected and eventually retired.

WHEREFORE Plaintiff asks that the court order that a constructive trust be imposed on restaurant operations, and that any and all profits calculated on a weekly basis are distributed to Plaintiff forthwith. Thus the restaurant will be able to operate and expenses like rent, staff, and utility bills will all be paid, but no funds will be distributed to Defendants until such time that Plaintiff is repaid his $460,000 investment.

## COUNT V: QUANTUM MERUIT
## AGAINST ALL DEFENDANTS

37. Plaintiff repeats and realleges paragraphs 1-36 as if fully stated herein.

38. Based on the aforementioned false assurances and promises made by Defendant, Plaintiff has invested not less than $460,000 in the restaurant enterprise.

39. In addition to this substantial monetary investment, Plaintiff has invested approximately 1,280 hours in bringing the business to operational level, working through the legal complications of trying to transfer the liquor license, trying to persuade the landlord to allow transfer of the title, managing the renovation projects, marketing and promoting the business after it started operating, and managing the business for the first several months of its operation.

40. It was only because of his $460,000 monetary investment and his substantial time investment that the restaurant was able to begin and continue operations and become today a very successful business endeavor.

41. To date, Plaintiff has received no profit distributions. Plaintiff is entitled to 80% of the profit distributions dating back to the first week of the restaurant's operation or, in the alternative, the retirement of his outstanding investment and payment for his services rendered.

WHEREFORE Plaintiff is entitled under *quantum meruit* to not less than $460,000 plus reasonable interest and attorney's fees as well as payment for time spent at an hourly rate commensurate with his experience.

## COUNT VI: INTENTIONAL MALICIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AGAINST DEFENDANT IYOSSIAS TILAHUN

42. Plaintiff repeats and realleges paragraphs 1-41 as if fully stated herein.

43. Defendants Abere and Bayabile made false promises to Plaintiff which induced Plaintiff to enter into a contractual relationship with them as a partner in the restaurant enterprise LLC.

15

44. Defendant Tilahun knew about Plaintiff's contractual relationship, and desired to terminate it for his own personal benefit.

45. Based upon information and belief, Defendants Abere and Bayabile offered substantial incentives to Defendant Tilahun to interfere with Plaintiff's contractual relationship with them. Specifically, Defendant Abere offered Defendant Tilahun a Mercedes vehicle if he was successful in terminating Plaintiff's relationship with the restaurant enterprise. Defendant Tilahun's involvement was also secured by a promise made to him by Defendant Abere that he would receive a substantial salary and commission-based compensation once Plaintiff was removed from his managerial duties.

46. Defendant Tilahun intended to and did maliciously interfere with Plaintiff's contractual relationship with Defendants Abere and Bayabile by, *inter alia*, refusing to accept directions from Plaintiff regarding the management and upkeep of the restaurant enterprise, using rude, insubordinate speech in addressing Plaintiff, continuously monitoring activities of Plaintiff and reporting them to Defendants Abere and Bayabile, purposely defaming Plaintiff among the partners and other parties, purposely blaming plaintiff to cover up his mismanagements, telling Plaintiff that he did not work for Plaintiff, but rather only for Defendants Abere and Bayabile, not providing financial information to Plaintiff upon request, telling other employees not to obey Plaintiff's instructions (creating the impression among employees that Plaintiff doesn't have any control nor decision making), and in all aspects attempting to exclude Plaintiff from the management of the restaurant enterprise.

47. Defendant Tilahun was successful in his efforts to maliciously interfere with Plaintiff's contractual relationship with Defendants Abere and Bayabile, because Plaintiff was effectively shut out of the decision-making process for the restaurant enterprise and has also not received his allotted share of profit distributions.

16

48. As a result of Defendant Tilahun's intentional acts, Plaintiff has been damaged. He has no way of determining the restaurant's financial or operational condition, he no longer is able to make decisions at the restaurant that are obeyed, and he has nothing to show for his $460,000 investment except for a partnership agreement that is not honored.

WHEREFORE Plaintiff requests damages in the amount of not less than $544,000 from Defendant Tilahun for his role in the successful scheme to exclude Plaintiff from the operation of the restaurant enterprise. This number is Plaintiff's lost expectation of profits from March 2016 through December 2018.

Respectfully Submitted,

*/s/ Martin F. McMahon*
Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 - 4343
mm@martinmcmahonlaw.com
*Counsel for Plaintiff*