**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEWAY ALEMAYEHU,                          :
                                          :
        Plaintiff,                        :        Civil Action No.:        16-0596 (RC)
                                          :
        v.                                :        Re Document No.:        5
                                          :
BELAY ABERE, et al.,                      :
                                          :
        Defendants.                       :

<u>**MEMORANDUM OPINION**</u>

**Granting in Part and Denying in Part Defendant's Motion to Dismiss**

## I.  INTRODUCTION

Plaintiff Neway Alemayehu brings this action alleging that three individuals, Belay

Abere, Bekalu Bayabile, and Iyossias Tilahun (collectively, "Defendants"), worked together to

defraud Mr. Alemayehu out of his $460,000 investment in a restaurant enterprise currently

known as Amsterdam Café and Lounge. *See generally* Compl., ECF No. 1. Mr. Tilahun,

proceeding *pro se*, has moved to dismiss Mr. Alemayehu's complaint under Federal Rule of

Civil Procedure 12(b)(6). *See* Def.'s Mot. Dismiss at 1, ECF No. 5. Because the Court concludes

that Mr. Alemayehu has failed to state a claim upon which relief can be granted for his

promissory estoppel and quantum meruit causes of action, the Court will grant Mr. Tilahun's

motion to dismiss as to those claims. Because, however, the Court also determines that

Mr. Alemayehu has properly alleged his remaining claims, the Court will deny Mr. Tilahun's

motion to dismiss as to Mr. Alemayehu's remaining claims.

## II. BACKGROUND

According to the complaint, Mr. Bayabile and Mr. Abere approached Mr. Alemayehu about investing in a restaurant enterprise in April 2015.[1] Compl. ¶ 7. A written agreement, signed by Mr. Abere, described the terms of the investment: Mr. Abere would transfer a building lease and liquor license to BelayAbere Enterprises, LLC ("the LLC"); Mr. Abere and Mr. Bayabile would be 5 percent and 15 percent shareholders in the LLC, respectively; Mr. Alemayehu would be the majority shareholder (owning the remaining 80 percent) of the LLC; and Mr. Alemayehu would serve as the executive manager of both the LLC and the restaurant. *Id.* Mr. Abere also made oral assurances reinforcing these terms. *See id.*

Based on these written agreement and oral assurances, Mr. Alemayehu decided to proceed with investing in the restaurant. *Id.* Mr. Alemayehu thus began contributing funds to "(a) pay back rents that [Mr.] Abere owed the landlord, along with taxes and insurance; (b) pay all legal fees to get the lease and liquor license transferred to the LLC; (c) finish the renovation of the restaurant; (d) replace the HVAC and water heater systems; (e) purchase and install new kitchen equipment; (f) install security and fire alarm systems; and (g) furnish the restaurant with tables, chairs, bar stools, a liquor/wine inventory, and a computerized cash register system." *Id.* ¶ 9. Mr. Alemayhu paid for "substantial construction work" that was "performed over the course of more than three months." *Id.* ¶ 8.

But Mr. Alemayehu soon encountered difficulties. The landlord for the restaurant's building refused to allow Mr. Abere to assign the building lease to the LLC. *Id.* ¶ 10. Because of

---

[1] At the motion to dismiss stage, the Court accepts the plaintiff's factual allegations as true. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) (first citing *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C. Cir. 1984), *vacated on other grounds*, 471 U.S. 1113 (1985); and then citing *Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C. Cir. 1979)).

Mr. Abere's "history of being dishonest, not paying rent, and disappearing on [the landlord] for months at a time," the landlord wanted Mr. Abere to be personally liable for the rent. *Id.* Mr. Alemayehu, however, worked with the LLC's attorneys in an effort to persuade the landlord to allow assignment of the building lease to the LLC. *Id.* Mr. Alemayehu also attempted to transfer the liquor license to the LLC, in accordance with the written agreement and oral assurances he had received. *Id.*

During this time, however, Mr. Abere left the United States without informing Mr. Alemayehu, traveling to East Africa. *Id.* Mr. Abere remained abroad for nearly three months, and was "hardly reachable" during this time. *Id.* Mr. Alemayehu eventually received, however, assurance from Mr. Abere that he would return to the United States shortly, and that he would reach out to the landlord's attorney to arrange assignment of the lease. *Id.* With this assurance, Mr. Alemayehu continued to supply funds for the restaurant's rent, tax, and insurance. *Id.*

After Mr. Abere's return to the United States, he informed Mr. Alemayehu and the LLC attorneys that, curiously, the landlord would only assign the lease to the LLC if the landlord was "presented with an LLC operating agreement which showed [Mr.] Abere as the only member." *Id.* ¶ 11. Mr. Abere requested, therefore, that Mr. Alemayehu be temporarily removed from the LLC membership documents. *Id.* Although "[n]either [Mr. Alemayehu] nor the LLC attorneys believed this to be an acceptable outcome, . . . the attorneys made the temporary changes until the assignment was accomplished." *Id.* The amended operating agreement listed both Mr. Alemayehu and Mr. Abere as "manager[s]." *Id.*

As a result of these issues with the lease and license transfers, the LLC attorneys eventually recommended a new plan for the restaurant, which they suggested was the "only realistic way forward." *Id.* ¶ 12. First, "the lease, liquor license[,] and business license," would

remain "under [Mr.] Abere's name." *Id.* Mr. Abere would also "sign a binding agreement with the LLC that made the LLC the managing company until [Mr.] Abere regained the landlord's trust and obtained her permission to transfer the lease, liquor license[,] and business license to the LLC." *Id.* Mr. Alemayehu, meanwhile, "would be the executive manager, have daily access to financial records, be able to participate in major corporate decisions, and secure the power of attorney from [Mr.] Abere." *Id.*

In accordance with this plan, in October 2015, the liquor license was subsequently transferred to Mr. Abere. *Id.* ¶ 13. But Mr. Abere once again left the United States "without completing the management agreement, without giving the power of attorney to [Mr. Alemayehu], and without resolving an ongoing disagreement with [Mr. Alemayehu] regarding the financial aspect of the management agreement." *Id.* Despite these issues, the restaurant opened and began operating around this time. *Id.*

A few months later, Mr. Abere returned to the United States. *Id.* ¶ 14. Shortly afterwards, Mr. Abere "argued that his superior liability protection and experience required that he take over the management and operation of the business." *Id.* Mr. Abere assured Mr. Alemayehu that this takeover would be temporary. *Id.* Mr. Alemayehu eventually relented as he believed this course of action "to be beneficial . . . as long as [the] management was performed in an inclusive, collaborative way." *Id.* But later, when Mr. Alemayehu requested that Mr. Abere complete the management agreement and sign the power of attorney, Mr. Abere delayed because "he needed legal advice." *Id.* ¶ 15. Mr. Abere eventually refused to sign the power of attorney, *id.*, and also refused to sign the "management agreement . . . that would have made [Mr. Alemayehu] the on-site executive manager consistent with the executive operation rights," *id.* ¶ 19.

Sometime during these events, Mr. Abere hired Mr. Tilahun, who had previously worked only as a consultant for the restaurant, as the "general manager" of the restaurant with "major authority in terms of running the restaurant enterprise." *Id.* ¶ 16. Mr. Alemayehu expressed to Mr. Abere that Mr. Tilahun was unqualified to serve as general manager, and "need[ed] to be replaced by a more experienced manager." *Id.* ¶ 17. Mr. Tilahun reportedly "had very little people-to-people skills, and as a result the company had very bad restaurant reviews from customers." *Id.*

In addition, Mr. Tilahun presented several other issues for the restaurant. *See id.* First, Mr. Tilahun "is a foreign national who does not possess the necessary authorization to work in the United States" and his hiring "thus exposed the restaurant enterprise senior executives . . . to potential liability in case of an Immigration Customs Enforcement investigation, which could result in closure and loss of [Mr. Alemayehu's] investment." *Id.* ¶ 16. Second, because of his immigration status, Mr. Tilahun could not apply to serve as "an [Alcoholic] Beverage Commission (ABC) Licensed manager," and therefore the restaurant operated without a licensed manager "which is against [the District of Columbia Alcoholic Beverage Regulation Administration's] basic rules." *Id.* ¶ 17.

Mr. Tilahun, however, assisted Mr. Abere in undermining Mr. Alemayehu's position in both the LLC and the restaurant. *See id.* ¶¶ 16–18. Mr. Tilahun followed Mr. Abere's instructions to keep Mr. Alemayehu "in the dark about [the restaurant's] operations." *Id.* ¶ 16. Mr. Tilahun was allegedly "promised a salary and commission structure as a reward" for doing so. *Id.* ¶ 17. Mr. Tilahun also reportedly had a "long history of securing financial assistance from [Mr.] Abere." *Id.* That assistance, which apparently "included some of [Mr. Alemayehu's] funds," allowed Mr. Tilahun "to acquire a Mercedes Benz for his own use and enjoyment." *Id.*

Mr. Tilahun also "maliciously interfere[d] with the contractual agreements" made regarding Mr. Alemayehu's involvement in the restaurant. *Id.* ¶ 20. Specifically, Mr. Tilahun "began informing restaurant employees not to take any orders from [Mr. Alemayehu]." *Id.* Mr. Tilahun told the employees "that he work[ed] for [Mr.] Abere and [Mr.] Bayabile," which "created an impression among the employees that [Mr. Alemayehu] did not have any control or decision making authority." *Id.* Mr. Tilahun reportedly also "badmouth[ed] [Mr. Alemayehu] to all restaurant employees, blaming [Mr. Alemayehu] to cover up [Mr.] Abere's poor management and planning decisions." *Id.*

Likewise, Mr. Bayabile, the third LLC shareholder, also appeared to work against Mr. Alemayehu. Mr. Bayabile followed Mr. Abere's instructions to "keep [Mr. Alemayehu] in the dark as to the financial operations of the restaurant enterprise." *Id.* ¶ 18. Mr. Bayabile thus "continued to work against [Mr. Alemayehu's] interest by totally aligning himself with [Mr.] Abere." *Id.* ¶ 20.

Despite the restaurant's rough start, *see id.* ¶ 17, starting in December 2015, Defendants "were able to realize the turnaround of the restaurant business," *id.* ¶ 20. Soon afterwards, however, Mr. Abere "changed the bank account of the merchant services to his personal account, without letting [Mr. Alemayehu] know about that change." *Id.* ¶ 19. Mr. Alemayehu believes that Mr. Abere forged Mr. Alemayehu's signature to do so. *See id.* Mr. Abere has "refused to share financial statements and financial operations data with [Mr. Alemayehu]" and has "avoided all communication[s], discussions, and [Mr. Alameyhu's] request[s] for explanation." *Id.* Therefore, Mr. Alemayehu claims he "knows nothing about the financial status of the business," despite his status as an investor in the restaurant and as the majority shareholder in the LLC. *Id.*

In February 2016, Defendants "delay[ed] in making timely rent payments" for the restaurant's building, and as a result received complaints from the landlord. *Id.* ¶ 22. These rent payments were delayed even though Defendants had previously "solicited additional funding from [Mr. Alemayehu]" to make "overdue rent payments." *Id.* To make these delinquent rent payments, Mr. Alemayehu contributed an additional $12,200 from his personal account, in addition to his initial investment. *See id.*

Ultimately, Mr. Abere "has continued, up through the filing of this lawsuit, to strengthen his control of the business, its operation and planning, all designed to totally remove [Mr. Alemayehu] from any involvement or managerial oversight responsibilities for the restaurant enterprise," *id.* ¶ 18, and "has tried to make it appear that he is the legitimate sole owner of the business," *id.* ¶ 19. Under Mr. Abere's supervision, all three Defendants "have made numerous executive decisions," including "financial planning and spending, employee hiring and recruiting, making deals with event hosts and other vendors including subleasing the business to another vendor" without Mr. Alemayehu's involvement. *Id.* ¶ 21. According to Mr. Alemayehu, he "would never had committed to funding the restaurant if he had known" that Mr. Abere would refuse to abide by the prior written agreement and oral assurances. *Id.* ¶ 19. Mr. Alemayehu states that he "has every reason to believe [Mr.] Abere never intended that the lease and licenses would be transferred to the LLC," and thus "believes that [the] purposes of the [prior written] agreement are not achievable." *Id.* ¶ 23. Mr. Alemayehu claims that he has been unsuccessful in "secur[ing] repayment of his over $460,000 investment" and thus filed this action. *Id.*

In his complaint, Mr. Alemayehu asserts six causes of action. *See id.* ¶¶ 24–48. Against all three Defendants, Mr. Alemayehu alleges unjust enrichment (Count II), promissory estoppel

(Count III), and quantum meruit (Count V). *See id.* ¶¶ 26–32, 37–41. Against Mr. Tilahun individually, Mr. Alemayehu alleges intentional interference with a contractual relationship (Count VI). *See id.* ¶¶ 42–48. Finally, Mr. Alemayehu requests from the Court an accounting (Count I) and constructive trust (Count IV). *See id.* ¶¶ 24–25, 33–36. Mr. Tilahun, proceeding *pro se*, has filed a motion to dismiss under Federal Rule of Procedure 12(b)(6), arguing that Mr. Alemayehu has failed to state a claim against Mr. Tilahun upon which relief can be granted. *See* Def.'s Mot. Dismiss at 1. Mr. Tilahun has not filed a reply brief in response to Mr. Alemayehu's opposition. *Cf.* D.D.C. Civ. R. 7(d) ("Within seven days after service of the memorandum in opposition the moving party may serve and file a reply memorandum."). Thus, Mr. Tilahun's motion is ripe for adjudication.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *Philip Morris*, 116 F. Supp. 2d at 135. It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are therefore

insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a

plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal

conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## IV.  DISCUSSION

Mr. Tilahun makes the same general argument under Rule 12(b)(6) for each of

Mr. Alemayehu's claims: that Mr. Alemayehu's complaint "fails [to] allege facts sufficient to

support the material elements of [Mr. Alamayehu's] alleged causes [of] action against

[Mr.] Tilahun." Def.'s Mem. P. & A. Supp. Mot. Dismiss at 2, ECF No. 5 [hereinafter Def.'s

Mem.]. Specifically, Mr. Tilahun asserts that, for Counts I through V, Mr. Alemayehu has failed

to make factual allegations against Mr. Tilahun specifically, and thus those causes of action

should be dismissed as to Mr. Tilahun. *See id.* at 2–5.[2] Mr. Tilahun further argues that for Count

---

[2] Mr. Tilahun repeatedly emphasizes that his name is not mentioned in the allegations
relating to these counts. *See, e.g.*, Def.'s Mem. at 2 ("What is missing from the allegation
contained in Count I . . . is the name of [Mr.] Tilahun."); *id.* at 4 ("[W]hat is missing is the name
of [Mr.] Tilahun in the allegations."). The Court acknowledges that many of the paragraphs of
Mr. Alemayehu's complaint alleging each count fail to mention Mr. Tilahun by name. *See, e.g.*,
Compl. ¶ 25 (failing to mention Mr. Tilahun in Mr. Alemayehu's accounting claim); Compl. ¶¶
27–28 (failing to mention Mr. Tilahun in Mr. Alemayehu's unjust enrichment claim). But
Mr. Alemayehu's oversight here merely amounts to inartful drafting. The Court notes that
Mr. Alemayehu repeats and re-alleges his paragraphs at the beginning of each of these counts.
*See* Compl. ¶¶ 24, 26, 29, 33, 37, 42. More importantly, however, "courts must consider the
complaint *in its entirety* . . . when ruling on Rule 12(b)(6) motions to dismiss." *Tellabs, Inc. v.
Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added). Therefore, the Court

VI, which was only alleged against Mr. Tilahun, Mr. Alemayehu has failed to make factual allegations supporting the necessary elements for that cause of action. *See id.* at 5–8. In his opposition to Mr. Tilahun's motion, Mr. Alemayehu argues that he has made "an abundance of factual allegations . . . against [Mr.] Tilahun" and thus Mr. Tilahun's motion should be denied. Pl.'s Opp'n Def.'s Mot. Dismiss at 1, ECF No. 7 [hereinafter Pl.'s Opp'n].

The Court must determine whether Mr. Alemayehu's well-pleaded facts are "enough to raise a right to relief" against Mr. Tilahun "above the speculative level," *Twombly*, 550 U.S. at 555–56, as to each of Mr. Alemayehu's claims. Accordingly, the Court will first address the counts alleged against all three Defendants (Counts II, III, and V), then address the count alleged against Mr. Tilahun individually (Count VI), and finally address Mr. Alemayehu's requests for specific remedies (Counts I and IV).

### A.  Unjust Enrichment (Count II)

Mr. Alemayehu asserts a claim of unjust enrichment against all three Defendants. *See* Compl. ¶¶ 26–28. "Under D.C. law, unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 255 (D.D.C. 2015) (brackets and internal quotation marks omitted) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008)).

In his motion to dismiss, Mr. Tilahun claims that Mr. Alemayehu has failed to allege facts showing "how [Mr.] Tilahun was unjustly enriched from the breach." Def.'s Mem. at 3.

---

will assess Mr. Alemayehu's allegations from his complaint, taken as a whole, to determine whether he has properly stated a claim.

The Court notes that Mr. Alamayehu's complaint contains numerous suggestions that Mr. Tilahun helped unjustly enrich *Mr. Abere*, rather than Mr. Tilahun himself. *See, e.g.*, Compl. ¶ 17 ("[Mr. Abere] clearly wanted [Mr.] Tilahun to continue being his right hand man to achieve his ambition of being unjustly enriched . . . ."); *id.* ¶ 28 ("Because [Mr.] Abere now has an ongoing and successful restaurant and event business courtesy of [Mr. Alemayehu's] investment . . . , [Mr.] Abere has been unjustly enriched in an amount not less than $460,000."). Because unjust enrichment requires that the plaintiff "confer[] a benefit *on the defendant*," *Campbell*, 130 F. Supp. 3d at 255 (emphasis added) (quoting *Fort Lincoln*, 944 A.2d at 1076), these allegations are insufficient to support an unjust enrichment claim against Mr. Tilahun.

But Mr. Alamayehu also alleges that he conferred a benefit on Mr. Tilahun and that Mr. Tilahun retained that benefit. *See* Compl. ¶ 17 (alleging that Mr. Tilahun was promised and received "some of [Mr. Alemayehu's] funds" which were used "to acquire a Mercedes Benz"); *id.* ¶ 45 (alleging that Mr. Tilahun "receive[d] a substantial salary and commission-based compensation once [Mr. Alemayehu] was removed from his managerial duties").[3] Mr. Alemayehu also adequately alleges that Mr. Tilahun's retention of these benefits was unjust. *See id.* ¶ 23 (stating that Mr. Alemayehu "no longer has any control over the success of the venture or the safety of his investment," and cannot "secure repayment of [that] investment"); *see also Lozinsky v. Georgia Res. Mgmt., LLC*, 734 F. Supp. 2d 150, 156 (D.D.C. 2010) (holding that where a defendant "accepted and used [a plaintiff's] money under the guise of an

---

[3] Although these allegations suggest that Mr. Tilahun may have received these benefits from Mr. Abere, not Mr. Alemayehu directly, courts in this District have held that benefits indirectly conferred on a defendant can support an unjust enrichment claim. *See, e.g.*, *JSC Transmashholding v. Miller*, 70 F. Supp. 3d 516, 523 n.5 (D.D.C. 2014) (holding that payments conveyed to a defendant through a third-party intermediary can support an unjust enrichment claim); *see also Campbell*, 130 F. Supp. 3d at 256–57 (collecting cases).

investment, but provided [the plaintiff] with nothing in return[,] . . . it would be unjust for [the

defendant] to retain [the plaintiff's] investment"). Therefore, Mr. Alemayehu has properly stated

a cause of action for unjust enrichment against Mr. Tilahun, and the Court will deny

Mr. Tilahun's request to dismiss this claim.

## B.  Promissory Estoppel (Count III)

Mr. Alemayehu's third cause of action alleges promissory estoppel against all three

Defendants. *See* Compl. ¶¶ 29–32. Specifically, Mr. Alemayehu alleges that "[t]he assurances

and promises made by Defendant to [Mr. Alemayehu] were reasonable under the circumstances,

so that an ordinary investor would rely on the representations made by Defendant." *Id.* ¶ 32.

Mr. Alemayehu states that he "did rely on those representations much to his financial detriment."

*Id.*

"To factually allege promissory estoppel, a plaintiff must establish (1) the existence of a

promise, (2) that the promise reasonably induced reliance on it, and (3) that the promisee relied

on the promise to his detriment." *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C.

2007), *aff'd*, 552 F.3d 836 (D.C. Cir. 2009) (citing *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 71

(D.D.C. 2005)). A promise "must be definite, as reliance on an indefinite promise is not

reasonable." *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 97 (D.D.C. 2003)

(citations omitted).  The promise must also have "definite terms on which the promisor would

expect the promisee to rely," although the promise "need not be as specific and definite as a

contract." *Id.* (citing *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979)).

Here, Mr. Tilahun argues that Mr. Alemayehu "does not allege that [Mr.] Tilahun made

any promises to convince [Mr. Alemayehu] to make [his] investment." Def.'s Mem. at 3. The

Court agrees. *See Woodruff v. Nat'l Op. Research Ctr.*, 505 F. Supp. 2d 138, 143 n.3 (D.D.C.

2007) ("To establish a promissory estoppel claim, the plaintiff must show that *the defendant made a promise . . . .*" (emphasis added)). Mr. Tilahun correctly notes that it is unclear which of the Defendants Mr. Alemayehu refers to in the portions of his complaint alleging promissory estoppel. *See* Def.'s Mem. at 3. As Mr. Tilahun suggests, from the "general wording and the preceding paragraphs," these allegations appear to refer to Mr. Abere, not to Mr. Tilahun. *Id.* Indeed, the complaint alleges that Mr. Tilahun was hired after Mr. Alemayehu made his initial investment, *see* Compl. ¶ 16, strongly suggesting that Mr. Tilahun could not have made promises that induced Mr. Alemayehu to invest.

The Court acknowledges that Mr. Alemayehu's complaint does suggest more generally that Defendants made "false and misleading promises" to Mr. Alemayehu. *See* Pl.'s Opp'n at 5. But Mr. Alemayehu does not provide any detail for what those promises entail. *See* Compl. at 3. This lack of detail is insufficient to establish the definite promise required for a promissory estoppel claim. *See In re U.S. Office Prods.*, 251 F. Supp. 2d at 97 (holding that vague and indefinite terms are insufficient to state a claim for promissory estoppel); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, the Court will dismiss Mr. Alemayehu's promissory estoppel claim against Mr. Tilahun.[4]

### C.  Quantum Meruit (Count V)

Mr. Alemayehu also seeks to recover in quantum meruit against all three Defendants. *See* Compl. ¶¶ 37–41. He claims that he "has invested not less than $460,000" and "approximately 1,280 hours in bringing the business to [an] operational level." *Id.* ¶¶ 38–39. Mr. Alemayehu

---

[4] Because the Court concludes that Mr. Alemayehu has failed to allege that Mr. Tilahun made an adequately definite promise, the Court cannot determine whether Mr. Alemayehu's detrimental reliance on that promise was reasonable. *See Osseiran*, 498 F. Supp. 2d at 147.

alleges that "[i]t was only because" of these investments "that the restaurant was able to begin and continue operations and become today a very successful business endeavor." *Id.* ¶ 40. Under D.C. law, to state a claim for quantum meruit, a plaintiff must establish: (1) "valuable services rendered by the plaintiff"; (2) "for the person from whom recovery is sought"; (3) "which services were accepted and enjoyed by that person"; and (4) "under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1218 n.8 (D.C. 1993).[5]

Mr. Tilahun, however, argues that he is a "mere employee of the restaurant[,] . . . not a co-owner of the business[,] and thus does not have any stake in the business and cannot be held liable for [quantum meruit]." Def.'s Mem. at 5. In other words, Mr. Tilahun seems to claim that he did not "accept[] and enjoy[]" the services rendered by Mr. Alemayehu. *Providence Hosp.*, 634 A.2d at 1218 n.8. Mr. Alemayehu, however, notes that he has alleged that Mr. Tilahun "received a substantial salary and commission-based compensation for his work," and received "financial assistance from [Mr.] Abere," which included "some of [Mr. Alemayehu's] funds." Pl.'s Opp'n at 8–9. Mr. Tilamun certainly could not have enjoyed these benefits if "[i]t was only because" of Mr. Alemayehu's services (i.e., the investment of his time and money) "that the restaurant was able to . . . become today a very successful business endeavor." Compl. ¶ 40.

---

[5] Historically, courts have referred to both quantum meruit and unjust enrichment interchangeably. *See generally* Restatement (Third) of Restitution and Unjust Enrichment § 31 cmt. e (Am. Law Inst. 2011). D.C. law, however, considers quantum meruit distinct from unjust enrichment. *See United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246–47 (D.C. Cir. 1996). Quantum meruit "rests on a contract implied in fact, that is, a contract inferred from the conduct of the parties." *Id.* at 246. Unjust enrichment, on the other hand, "rests on a contract implied in law, that is, on the principle of quasi-contract," and "is possible in the absence of any contract, actual or implied in fact." *Id.* at 247.

Mr. Alemayehu, however, does not allege that Mr. Tilamun *directly* benefited from Mr. Alemayehu's services. It is unclear whether D.C. law allows recovery in quantum meruit for services indirectly received, as it does for a claim of unjust enrichment. *See supra* note 3. The Court, however, need not determine whether indirect receipt is sufficient because Mr. Alemayehu's claim for quantum meruit against Mr. Tilahun is deficient for another reason: the complaint fails to allege that Mr. Tilahun knew or should have known that Mr. Alemayehu expected to be paid by Mr. Tilahun in return for Mr. Alemayehu's services. *See Providence Hosp.*, 634 A.2d at 1218 n.8 (requiring "circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid"); *see also Boyd v. Farrin*, 958 F. Supp. 2d 232, 241 (D.D.C. 2013) (dismissing a quantum meruit claim that "fail[ed] to allege with specificity facts establishing that defendants knew [the plaintiff] expected to be paid").

Unlike Mr. Alemayehu's unjust enrichment claim, *see supra* Part IV.A, a quantum meruit claim requires that the Court infer a contract "from the conduct of the parties." *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246 (D.C. Cir. 1996). Mr. Alemayehu makes no allegations establishing that Mr. Tilahun should have known Mr. Alemayehu expected to be paid—a requirement for the Court to infer such an implied contract. *See Boyd*, 958 F. Supp. 2d at 241. The Court will therefore dismiss Mr. Alemayehu's claim of quantum meruit against Mr. Tilamun.

### D.  Interference with Contractual Relationship (Count VI)

Against Mr. Tilahun individually, Mr. Alemayehu further asserts a claim of "intentional malicious interference with a contractual relationship." *See* Compl. ¶¶ 42–48. Mr. Alamayehu alleges that Mr. Tilahun "maliciously interfere[d] with [Mr. Alemayehu's] contractual relationship with [Mr.] Abere and [Mr.] Bayabile," *id.* ¶¶ 46, 47, and as a result, Mr. Alemayehu

"has been damaged," *id.* ¶ 48. Under D.C. law, a claim of tortious interference with contract requires: (1) "the existence of a contract"; (2) "knowledge of the contract by the defendant"; (3) "the defendant's intentional procurement of the contract's breach"; and (4) "damages resulting from that breach." *Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 20 (D.D.C. 2011), *aff'd*, 683 F.3d 397 (D.C. Cir. 2012) (citing *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 325 (D.C. 2008)).

Mr. Tilamun contends that Mr. Alemayehu's interference claim should be dismissed for two reasons. *See* Def.'s Mem. at 5–8. First, Mr. Tilamun claims the complaint "fails to . . . show any interference by [Mr.] Tilahun in the contractual relationship." *Id.* at 5. Mr. Tilahun points to the third element, which requires that the alleged intereference have "'induced' or caused a breach or termination." *Id.* at 6. Mr. Tilahun claims there are no allegations "that [he] induced or somehow made [Mr.] Abere or/and [Mr.] Bayabile . . . breach the contractual relationship with [Mr. Alemayehu] or interfered with the contractual relationship causing [Mr.] Abere or/and [Mr.] Bayabile to fail to honor their contractual relationship with [Mr. Alemayehu]." *Id.* at 7. On the contrary, Mr. Tilahun claims that the complaint actually alleges that "[Mr.] Abere and [Mr.] Bayabile induced Mr. Tilahun to allegedly interfere in the contractual relationship." *Id.* Second, Mr. Tilahun claims that the complaint fails to allege "that there [were] resulting damages due to the alleged interference." *Id.* at 5. Mr. Tilahun claims that Mr. Alemayehu's damages "must be demonstrated with reasonable certainty." *Id.* at 7–8. Mr. Tilahun claims that Mr. Alemayehu's requested damages are improperly speculative, and include prospective damages, which Mr. Tilahun claims is improper. *See id.* at 7.

In his opposition, Mr. Alemayehu points to portions of the complaint that he claims adequately allege his interference claim. *See* Pl.'s Opp'n at 10–11. The Court agrees that these

allegations are sufficient to state a cognizable interference claim. The complaint alleges that Mr. Tilahun "marginaliz[ed] [Mr. Alemayehu] from any decision making in restaurant operations," Compl. ¶ 4; that Mr. Tilahun kept Mr. Alemayehu "in the dark about those operations," *id.* ¶ 16; and that Mr. Tilahun participated in "numerous executive decisions without informing or engaging [Mr. Alemayehu] in [the] discussions," *id.* ¶ 21. Taken with Mr. Alemayehu's other allegations—allegations that a contract existed between Mr. Alemayehu, Mr. Abere, and Mr. Bayabile, *see id.* ¶ 43, and that Mr. Tilahun knew about the contract, *see id.* ¶ 44—the complaint plausibly states an interference claim.

Mr. Tilahun's argument that he cannot be liable for the interference because he "is a mere employee" who "worked under the direction[ ] and supervision of" the other Defendants is not persuasive. *See* Def.'s Mem. at 7. In fact, Mr. Tilahun's acknowledgement of the allegation that he was induced by Mr. Abere and Mr. Bayabile to interfere with the contractual relationship, *see id.* at 7; *accord* Compl. ¶ 45, actually undermines Mr. Tilahun's contention that the complaint made no allegations regarding his interference, *see* Def.'s Mem. at 7. Even if Mr. Tilahun's interference of the contractual relationship was induced by Mr. Abere and Mr. Bayabile, the fact remains that the complaint adequately alleges that Mr. Tilahun engaged in that interference. *See id.* Mr. Alemayehu need not show that Mr. Tilahun interfered with his fellow Defendants' *ability* to maintain a contractual relationship; rather, Mr. Alemayehu need only show that Mr. Tilahun interfered with *the contractual relationship*. *See Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 64–65 (D.D.C. 2006) (holding that a defendant can be liable for interference by affecting not only a *third-party's* ability to maintain a contract, but also a *plaintiff's* ability to maintain a contract).

As to damages, Mr. Alemayehu also adequately pleads that he was injured by Mr. Tilahun's alleged interference. *See* Compl. ¶ 17 (alleging that Mr. Tilahun received "some of

[Mr. Alemayehu's] funds"); *id.* ¶ 48 (alleging that Mr. Alemayehu now "has nothing to show for his $460,000 investment"). Mr. Tilamun's assertion that Mr. Alemayehu's damages calculation is speculative and prospective is inconsequential. At this juncture, Mr. Alemayehu is not required to make a precise damages calculation. *See NCB Mgmt. Servs., Inc. v. FDIC*, 843 F. Supp. 2d 62, 70 (D.D.C. 2012) (holding that "[a]t [the pleadings] stage," a plaintiff "need not plead with particularity damages that would typically be expected to flow from its claims"). And if Mr. Alemayehu prevails in his interference claim, he is entitled to all damages flowing from Mr. Tilahun's interference—even if those damages are prospective in nature. *See* Restatement (Second) of Torts § 774A (Am. Law. Inst. 1979) (stating that damages for interference include "the pecuniary loss of the benefits of the contract"; "consequential losses for which the interference is a legal cause"; and "emotional distress or actual harm to reputation, if they are reasonably to be expected to result"); *see also Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 592 F. Supp. 2d 86, 100 (D.D.C. 2009) (applying the Restatement's approach). Because Mr. Alemayehu has properly alleged the elements of a claim of tortious interference with contract against Mr. Tilahun, the Court will deny Mr. Tilahun's request to dismiss this claim.

### E.  Accounting (Count I)

In his complaint, Mr. Alemayehu notes that he has "repeatedly sought information on the business accounts details" but "has been rebuffed by Defendant in all of these efforts." Compl. ¶ 25. He thus requests an order from the Court to "secure a complete accounting from Defendant." *Id.* Mr. Alemayehu pleads this cause of action against all three Defendants. *See id.* ¶¶ 24–25.

"An accounting is 'a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation.'" *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69,

103 (D.D.C. 2006) (quoting *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1178 n.2 (Miss. 2004)); *see also Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 293 (D.D.C. 2011). An accounting may be appropriate "when a plaintiff is unable 'to determine how much, if any, money is due him from another.'" *Bates*, 466 F. Supp. 2d at 103 (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)).

Here, Mr. Tilahun claims that "there is no factual allegation against" him regarding this claim. Def.'s Mem. at 2. "Besides the inclusion of [Mr. Tilahun's] name," the complaint "does not contain any factual allegation that [Mr.] Tilahun played any role . . . in hindering [Mr. Alemayehu's] access to the accounting documents." *Id.* But as Mr. Alemayehu emphasizes in his opposition, he has made many factual allegations as to Mr. Tilahun's role in obscuring the financial information that Mr. Alemayehu seeks. *See* Pl.'s Opp'n at 2–3. Mr. Alemayehu alleges that Mr. Tilahun was told to "keep [Mr. Alemayehu] in the dark about [restaurant] operations" in return for "a salary and commission structure." Compl. ¶¶ 16, 17. Mr. Tilahun also participated in "numerous executive decisions," including "financial planning and spending," *id.* ¶ 21, and refused to "provid[e] financial information to [Mr. Alemayehu] upon request," *id.* ¶ 46.

Although it remains to be seen whether Mr. Alemayehu is entitled to what admittedly is "an extraordinary remedy," *Bates*, 466 F. Supp. 2d at 103 (citation and internal quotation marks omitted), Mr. Alemayehu has plead "enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *see Bates*, 466 F. Supp. 2d at 103–04 (holding that allegations that the defendants "ma[de] it impossible for the plaintiffs to determine what funds were received, spent, and remain" were sufficient to state a claim for accounting (alteration omitted)).[6]

---

[6] The Court notes that, in order to justify this extraordinary equitable remedy, Mr. Alemayehu must also be "able to show 'that the remedy at law is inadequate.'" *Bates*, 466 F. Supp. 2d at 103 (citing 1 Am. Jur. 2d Accounts and Accounting § 59 (2006)).

Therefore, the Court will deny Mr. Tilahun's request to dismiss Mr. Alemayehu's request for accounting.

### F.  Constructive Trust (Count IV)

Finally, Count IV of Mr. Alemayehu's complaint alleges that because "[Mr. Alemayehu] needs a mechanism to ensure that his $460,000 investment will be returned to him in the short term," he "needs the imposition of a constructive trust on the operations of the restaurant." Compl. ¶ 36. Mr. Tilahun argues that Mr. Alemayehu's request for a constructive trust should be dismissed because "[a]ll allegations contained in this claim relate to [Mr.] Abere" and not Mr. Tilahun. Def.'s Mem. at 4.

"[A] constructive trust," however, "is not an independent cause of action." *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003). Instead, "[a] constructive trust is a remedy that a court devises after litigation to redress the injustice that would otherwise occur when one person has fraudulently or wrongfully obtained the property of another." *Id.* (internal quotation marks omitted) (first quoting *United States v. BCCI Holdings*, 46 F.3d 1185, 1190 (D.C.Cir.1995), and then quoting *United States v. Taylor*, 867 F.2d 700, 703 (D.C. Cir. 1989)); *see also Ross v. Hacienda Co-op., Inc.*, 686 A.2d 186, 191 (D.C. 1996) ("The imposition of a constructive trust is an equitable remedy.").

Because a constructive trust is not an independent cause of action, the Court will dismiss Count IV.  Nonetheless, the Court will construe the request for a constructive trust as a request for injunctive relief.  The Court takes no position on whether this remedy would be appropriate in this case. Because the Court cannot determine whether any or all Defendants are liable to Mr. Alemayehu, it would be premature to resolve any questions related to remedies at this time.  *See Hickey v. Scott*, 738 F. Supp. 2d 55, 61 (D.D.C. 2010) (finding that a constructive trust is a

remedy and declining to determine whether imposing a constructive trust would be appropriate before the end of litigation).

## V.  CONCLUSION

For the foregoing reasons, Mr. Tilahun's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 3, 2016                                    RUDOLPH CONTRERAS
                                                         United States District Judge