# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |  |
|---|---|---|---|
| NEWAY ALEMAYEHU, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-0596 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 25, 26 |
| BELAY ABERE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## <u>MEMORANDUM OPINION</u>

**DENYING DEFENDANT ABERE'S MOTION TO DISMISS; DENYING PLAINTIFF ALEMAYEHU'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This case concerns the unfortunate and rather haphazard business dealings of several individuals seeking to jointly establish and operate a restaurant in the District of Columbia. Plaintiff Neway Alemayehu originally brought this action alleging that Belay Abere, Bekalu Bayabile, and Iyossias Tilahun worked together to defraud him out of a $460,000 investment. *See generally* Compl., ECF No. 1. Mr. Abere denied the allegations, claiming that the contemplated business arrangement never came to fruition and that, in fact, it was Mr. Alemayehu who had acted wrongfully by breaching certain duties he owed to Mr. Abere as his agent and employee. This case now comes before the Court on Mr. Abere's partial motion to dismiss and Mr. Alemayehu's motion to dismiss or, in the alternative, summary judgment. *See* Def.'s Mot. Dismiss ("Def.'s Mot.") at 1, ECF No. 25, Pl.'s Mot. Dismiss Alt. Summ. J. ("Pl.'s Mot.") at 1, ECF No. 26. For the reasons stated below, the Court denies both motions.

## II. FACTUAL BACKGROUND

In the spring of 2015, Mr. Alemayehu and Mr. Abere met to discuss a possible investment in a restaurant called the Amsterdam Café and Lounge, located in Washington, D.C. Compl. ¶ 7; Countercl. ¶ 9, ECF No. 4. Through their discussions, the parties ultimately came to an agreement. Although some of the details of the agreement are in dispute, the basic premise was that, in exchange for an initial investment, Mr. Alemayehu would receive an 80% ownership stake in a newly formed corporate entity, which would then be responsible for operating the restaurant. *See* Compl. ¶ 7; Countercl. ¶¶ 9–11, 16. For their part, Mr. Abere and Mr. Bayabile would each own five percent and fifteen percent of the business, respectively. *See* Compl. ¶ 7; Countercl. ¶ 10. The agreement also contemplated that Mr. Abere would assign a commercial lease to the newly formed entity and that an existing liquor license would also be transferred to the business. Compl. ¶ 7; Countercl. ¶¶ 9, 12. The parties dispute, however, whether these transfers were Mr. Abere's affirmative obligations or whether, instead, they were express conditions on the contract.

Nevertheless, Mr. Alemayehu claims that these promises and the prospect of owning 80% of the restaurant venture induced him to invest substantial sums of money into the business. Indeed, in addition to making an initial investment of approximately $80,000, *see* Compl. ¶ 32, Mr. Alemayehu claims that he also contributed funds to pay: back rents owed to the landlord, along with taxes and insurance, legal fees associated with the attempt to transfer the lease and liquor license, substantial construction and renovation work on the restaurant, the purchase and installation of new kitchen equipment, security and fire alarm systems, restaurant furnishings, a liquor and wine inventory, and a computerized cash register system. Compl. ¶¶ 8–9; *see also*

Countercl. ¶ 17.  In total, Mr. Alemayehu claims that he invested more than $460,000 in the restaurant.  Compl. ¶ 32.

Unfortunately, the business arrangement did not unfold as the parties had intended. Indeed, despite their efforts to persuade the landlord of the building in which the restaurant was located, she ultimately refused to permit any assignment of the commercial lease from the current leaseholder, Mr. Abere individually, to the newly formed business entity.  Compl. ¶ 10; Countercl. ¶ 20.  Rather, she required that Mr. Abere—and only Mr. Abere—be responsible for the lease.  *See* Compl. ¶ 10; Countercl. ¶ 20.  Mr. Alemayehu alleges that, at some point, Mr. Abere represented to him that the only way the landlord would permit the assignment was if she were presented with an operating agreement showing that Mr. Abere was the only owner of the corporate entity.  Compl. ¶ 11.  Thus, Mr. Alemayehu allegedly agreed to be removed from the corporate documents, albeit temporarily, until the assignment could be accomplished.  Compl. ¶ 11.  But apparently the landlord was unwilling to assign the lease even to an entity solely owned by Mr. Abere.  Compl. ¶ 12; Countercl. ¶ 20.  Given the circumstances, Mr. Alemayehu and Mr. Abere believed that the only realistic way forward was to keep the lease, liquor license, and business license in the name of Mr. Abere in his personal capacity.  *See* Compl. ¶ 12; Countercl. ¶ 21.

However, the parties dispute what exactly their future intentions were.  Mr. Alemayehu claims that this Abere-centered operation was a temporary arrangement and that they had agreed that the corporate entity would manage the business until they could find a way to convince the landlord to substitute the corporate entity for Mr. Abere on the lease.  *See* Compl. ¶ 12. Moreover, Mr. Alemayehu argues that, as an 80% owner, he was to act as the restaurant's executive manager, have daily access to financial records, participate in major business

decisions, and would receive a power of attorney from Mr. Abere. *See* Compl. ¶ 12. Mr. Abere, on the other hand, claims that they modified their earlier agreement. *See* Countercl. ¶ 22. Specifically, he claims that they agreed that Mr. Abere would form, own, and operate the restaurant, but that he would employ Mr. Alemayehu as the restaurant's manager and compensate him with 80% of the business's profits in consideration for his initial investment. *See* Countercl. ¶ 22.

Regardless, in October 2015, the restaurant opened for business and Mr. Alemayehu assumed the role of executive manager while Mr. Abere was traveling outside of the United States. *See* Compl. ¶ 13; Countercl. ¶¶ 23, 26. But no management agreement or power of attorney was ever executed, either before Mr. Abere left or after he returned. Compl. ¶¶ 13, 15. And, in fact, it appears that Mr. Alemayehu's time as executive manager was rather short lived. Mr. Alemayehu alleges that when Mr. Abere returned a month or two later, Mr. Abere suggested that he take over the management and operation of the business given his "superior liability protection and experience," but that this change would only last for "a few months." Compl. ¶ 14. Alemayehu relented, believing this course of action "to be beneficial . . . as long as [the] management was performed in an inclusive, collaborative way." Compl. ¶ 14. But subsequently, according to Mr. Alemayehu, Mr. Abere took several actions meant to undermine his authority as executive manager and never restored Mr. Alemayehu to that position. Compl. ¶ 18 (Mr. Abere "has continued, up through the filing of this lawsuit, to strengthen his control of the business, its operation and planning, all designed to totally remove [Mr. Alemayehu] from any involvement or managerial oversight responsibilities for the restaurant enterprise."). Furthermore, Mr. Alemayehu claims that, even though he is entitled to 80% of the profits, he has received no profit distributions, Compl. ¶ 41, and Mr. Abere "has tried to make it appear that he

is the legitimate sole owner of the business." Compl. ¶ 19. All of this seems to have culminated when, on March 4, 2016, Mr. Alemayehu disassociated himself from the venture. *See* Letter from Mr. Alemayehu to Mr. Abere, ECF No. 28-6. That same month, he brought this suit seeking what he believes is due to him.

Mr. Abere, however, has a somewhat different take. According to Mr. Abere, upon his return, he discovered that Mr. Alemayehu had abused his position of trust and failed to faithfully and fully perform his duties as manager. Countercl. ¶ 27. Specifically, he claims that Mr. Alemayehu failed or refused to pay certain taxes, salaries of employees, and invoices submitted by vendors and third parties. Countercl. ¶ 27. In addition, Mr. Abere learned that, while the business had generated approximately $110,422.81 in gross receipts, that money went unaccounted for. Countercl. ¶ 28. Mr. Alemayehu allegedly admitted that he took approximately $13,000 from the business to pay a personal debt, but could not account for the remaining balance. Countercl. ¶ 28. Furthermore, Mr. Abere learned that, before the opening of the restaurant, Mr. Alemayehu had signed a purported Settlement Agreement and Mutual General Release (the "Settlement Agreement") on Mr. Abere's behalf, but without his knowledge or consent. Countercl. ¶ 30. The Settlement Agreement purports to release potential claims that Mr. Abere had against Mr. Abere's former sub-tenant, Wilson Concepts, LLC ("Wilson Concepts"), and its proprietor, Garnell Wilson, for, among other things, previous unpaid rent. Countercl. ¶ 30. According to Mr. Abere, it was for all of these reasons that he ultimately decided to remove Mr. Alemayehu as the manager of the restaurant. Countercl. ¶ 32.

In March 2016, Mr. Alemayehu filed a complaint initiating this lawsuit. *See generally* Compl. Mr. Alemayehu asserts six claims against Mr. Abere, including claims for unjust enrichment, promissory estoppel, and quantum meruit. *See* Compl. ¶¶ 26–32, 37–41. Mr.

Abere, in turn, filed a counterclaim against Mr. Alemayehu.  *See generally* Countercl.  He

asserts, among other things, claims for breach of fiduciary duty, breach of contract, quasi-

contract/breach of agency contract, and unjust enrichment.  *See* Countercl. ¶¶ 36–52.  Both Mr.

Abere and Mr. Alemayehu have since filed answers to the claims against them.[1]

On May 8, 2017, Mr. Abere filed a partial motion to dismiss under Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  *See* Def.'s Mot.  That same day, Mr. Alemayehu also filed a

motion to dismiss, or in the alternative, for summary judgment.  *See* Pl.'s Mot.  Both motions

have been fully briefed and are now ripe for decision.  The Court therefore addresses each

motion in turn.

### III.  MR. ABERE'S MOTION

Before turning to the merits of Mr. Abere's motion, the Court must first clear up a

technical procedural issue.  Mr. Abere styles his motion as a motion dismiss under Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  *See generally* Def.'s Mot.  Under the Federal Rules,

such motions are only available to parties *before* they have filed a responsive pleading.  *See* Fed.

R. Civ. P. 12(b) ("A motion . . . must be made before pleading if a responsive pleading is

allowed.").  Because Mr. Abere has already filed an answer in this case, he is not entitled to

relief under Rule 12(b)(6).  *See id.*  However, under the circumstances, the proper course of

action is to construe the motion to dismiss as a motion for judgment on the pleadings under Rule

12(c) because the standard under both rules is essentially same.  *See Bloom v. McHugh*, 828 F.

Supp. 2d 43, 49 (D.D.C. 2011) ("Because, however, the standards for a Rule 12(b)(6) motion and

---

[1] On August 3, 2016, this Court granted Defendant Tilahun's Motion to Dismiss the
claims against him for promissory estoppel and quantum meruit.  *See Alemayehu v. Abere*, 199
F. Supp. 3d 74 (D.D.C. 2016).  However, the Court determined that Mr. Alemayehu had
adequately alleged claims for accounting, unjust enrichment, and intentional malicious
interference with a contractual relationship against him.  *See id.* at 77.

a Rule 12(c) motion for judgment on the pleadings are identical, courts routinely construe motions to dismiss that are filed after a responsive pleading as motions for judgment on the pleadings, and this Court will do likewise."); *Lockhart v. Coastal Intern. Sec., Inc.*, 905 F. Supp. 2d 105, 112 ("[W]hen not raised in a motion prior to filing a pleading, the legal defense[] of failure to . . . state a claim upon which relief can be granted may be made by a motion under Rule 12(c).") (internal citation omitted); *Langley v. Napolitano*, 677 F. Supp. 2d 261, 262–63 (D.D.C. 2010).

Accordingly, Mr. Abere's motion will be granted only if the Complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 570 (2007). To state a plausible claim, the complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 555). In short, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Here, Mr. Abere seeks to dismiss Mr. Alemayehu's claims for promissory estoppel, quantum meruit, and constructive trust. *See generally* Def.'s Mot. Only the first two claims, however, are worthy of any significant discussion. As the Court noted in a prior opinion, constructive trust is not an independent cause of action, but a remedy. Thus, the Court "construe[s] the request for a constructive trust as a request for injunctive relief," but "takes no position on whether this remedy would be appropriate in this case." *Alemayehu*, 199 F. Supp. 3d

at 87. As for Mr. Alemayehu's claims for promissory estoppel and quantum meruit, the Court

finds that Mr. Alemayehu has alleged facts sufficient to state a plausible entitlement to relief.

Accordingly, the Court denies Mr. Abere's motion.

## A. Promissory Estoppel (Count III)

The Court first addresses Mr. Abere's argument that the complaint fails to allege

sufficient facts to state a claim for promissory estoppel. "To factually allege promissory

estoppel, a plaintiff must establish (1) the existence of a promise, (2) that the promise reasonably

induced reliance on it, and (3) that the promisee relied on the promise to his detriment."

*Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007), *aff'd*, 522 F.3d 836 (D.C.

Cir. 2009) (citing *Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 71 (D.D.C. 2005)). Under the law,

a plaintiff asserting a claim for promissory estoppel must allege that he or she relied on a

promise that is sufficiently "definite" because "reliance on an indefinite promise is not

reasonable." *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 73 (D.D.C. 2003)

(citations omitted). While the promise must have "definite terms on which the promisor would

expect the promisee to rely," it "need not be as specific and definite as a contract." *Id.* (citing

*Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979)). Based on this Court's prior

opinion dismissing the promissory estoppel claim against Mr. Tilahun, Mr. Abere now argues

that the same claim against him must fail because Mr. Alemayehu has not "allege[d] or

identif[ied] an adequately definite promise" that Mr. Abere made. Def.'s Mot. at 4. Mr. Abere's

argument, however, is misguided.

Although this Court previously held that Mr. Alemayehu's Complaint did not allege any

sufficiently definite promise from Mr. Tilahun, the Court finds no such impediment with respect

to his claim against Mr. Abere.[2]  Indeed, the alleged promises made by Mr. Abere are rather

specific.  According to the Complaint, Mr. Abere asked Mr. Alemayehu to invest money in the

restaurant and, in return, Mr. Alemayehu would receive an 80% ownership interest in the

business, entitling him to 80% of the restaurant's profits, and furthermore Mr. Alemayehu would

become the restaurant's "executive manager."  *See* Compl. ¶ 7 ("In April 2015, Defendants

Bayabile and Abere approached Plaintiff about investing in a restaurant enterprise currently

known as Amsterdam Café and Lounge" and "Defendant Abere made oral assurances and signed

a written agreement stating that . . . Plaintiff would be the majority shareholder (80%) and the

executive manager of the LLC and the restaurant enterprise.").  Although the Complaint does not

state expressly how much money Mr. Abere allegedly requested, it is reasonable to infer from

the pleadings that it was approximately $80,000.  *See* Compl. ¶ 32 ("Had Plaintiff known at the

time of the representations that were made to him that they were false, misleading, and dishonest

in nature, he never would have made the initial investment of $85,000"); *see also* Pl.'s Am.

Answer Def. Abere's Countercl. at 13, ECF No. 10 (under a proposed agreement "Plaintiff

Alemayehu's capital contribution . . . would be $80,000").  Mr. Abere also promised that he

would "transfer the building lease and liquor license to a [corporate entity]," making it possible

for the entity—which was the vehicle through which Mr. Alemayehu was to own his share in the

business—to actually operate the restaurant.  *See* Compl. ¶¶ 7, 9.  Later, when the lease transfer

negotiations with the landlord deteriorated and Mr. Abere asked that Mr. Alemayehu be removed

from membership documents, Mr. Abere assured Mr. Alemayehu that this was only a temporary

---

[2] In fact, in the prior opinion, this Court observed that, while it was somewhat "unclear
which of the Defendants Mr. Alemayehu refers to in the portions of his complaint alleging
promissory estoppel, . . . [the] allegations appear to refer to Mr. Abere."  *Alemayehu*, 199 F.
Supp. 3d at 83.

measure. *See* Compl. ¶ 11 ("Abere thus requested that [Mr. Alemayehu] be temporarily removed from the membership documents" to regain the landlord's trust); Compl. ¶ 14 ("[Mr. Abere] told [Mr. Alemayehu] that [taking over the management and operation of the business] would only be 'for a few months.'") (emphasis added). Thus, at bottom, the Complaint alleges that Mr. Abere promised and then repeatedly reassured Mr. Alemayehu that he would be made an 80% owner of the business, with all the attendant rights and privileges associated with that, in exchange for his investment. Mr. Abere cites no reason why such a promise should be held deficient for purposes of a promissory estoppel claim other than to argue, in conclusory fashion, that the allegations lack the requisite detail. The Court concludes otherwise. *See* in *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147–48 (D.D.C. 2007) (allegations that defendant "promised to sell [its] [corporate] shares to [plaintiff] and to incorporate those terms into a standard stock purchase agreement" and that defendant "repeatedly promised the imminent consummation of the stock sale" was sufficiently definite for promissory estoppel claim).

Furthermore, Mr. Alemayehu's Complaint also adequately alleges that Mr. Alemayehu reasonably relied upon Mr. Abere's promises to his detriment. According to the Complaint, Mr. Abere's promises not only induced Mr. Alemayehu to make an initial investment in the enterprise, they also convinced him to continue investing in the business on the belief that he would ultimately be entitled to 80% of the restaurant's net profits once it became profitable. *See* Compl. at 1–2, ¶¶ 7, 9. Among other things, Mr. Alemayehu paid for rent, "legal fees to get the lease and liquor license transferred to the LLC," renovations, new HVAC and water heater systems, new kitchen equipment, security and fire alarm systems, and restaurant furniture. *See* Compl. ¶ 9. In total, Mr. Alemayehu allegedly invested approximately $460,000 in the Amsterdam Café. *See* Compl. ¶ 32. But Mr. Abere never transferred the business over to the

corporate entity and Mr. Alemayehu never received any profit distributions. Compl. ¶¶ 19, 41. Mr. Alemayehu asserts that "he never would have made the initial investment of $85,000 and he certainly wouldn't have continued to fund the restaurant enterprise in an amount exceeding $460,000" if he had known that Mr. Abere never intended to make him an 80% owner and manager of the business. Compl. ¶ 32. Accordingly, Mr. Alemayehu's Complaint, taken as a whole, alleges sufficient facts to establish a claim of promissory estoppel.

## B. Quantum Meruit (Count V)

The Court next considers Mr. Alemayehu's quantum meruit claim. Under D.C. law, to state a claim for quantum meruit, a plaintiff must allege: (1) "valuable services rendered by the plaintiff;" (2) "for the person from whom recovery is sought;" (3) "which services were accepted and enjoyed by that person;" and (4) "under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid." *Providence Hosp. v. Dorsey*, 634 A.2d 1216, 1218 n.8 (D.C. 1993); *see also TVL Assoc. v. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C. App. 1984). Defendant argues that none of these elements has been sufficiently plead. Def.'s Mot. at 5. Again, the Court disagrees.

First, Mr. Alemayehu plainly alleges that he rendered valuable services.[3] Indeed, Mr. Alemayehu's Complaint lists several services that he allegedly rendered in connection with the

---

[3] Although Mr. Alemayehu also seems to premise his quantum meruit claim on his $460,000 investment in the business, the law is clear that quantum meruit claims must be based on the provision of services, rather than other things of value. *See, e.g.,* Restatement (Third) of Restitution and Unjust Enrichment § 31 (2011) ("A plaintiff who seeks a recovery 'in quantum meruit' usually asserts that the defendant is obligated to pay a reasonable price *for specified services rendered*."). That said, Mr. Alemayehu indisputably invested approximately $80,000 and renovated the business with his own funds. Ultimately, Mr. Abere ended up with the business and Mr. Alemayehu was left with nothing. Mr. Abere's claims that this is somehow appropriate makes very little sense. At the very least, Mr. Alemayehu has a plausible, if not compelling, unjust enrichment claim.

business.  *See* Compl. ¶ 39.  What is less clear, however, is to whom he provided these services or who necessarily enjoyed them.  At least some of Mr. Alemayehu's services appear to have been enjoyed, not by Mr. Abere, but by the putative corporate entity that was to operate the restaurant, of which he was to hold a significant stake.  Indeed, Mr. Alemayehu alleges that he spent time "working through the legal complications of trying to transfer the liquor license" and "trying to persuade the landlord to allow transfer of the [lease]" to the entity.  Compl. ¶ 39.  But if that is true, then the benefit of those services undoubtedly accrued to the benefit of *the corporate entity*—for which Mr. Abere was to be a part owner—rather than to Mr. Abere.  Accordingly, those services cannot rationally support Mr. Alemayehu's quantum meruit claim.

However, Mr. Abere might very well have been the beneficiary of Mr. Alemayehu's other services.  All of Mr. Alemayehu's other alleged services appear to be related to establishing the restaurant as a viable business.  For example, he alleges that he "manage[ed] the [restaurant's] renovation projects, market[ed] and promot[ed] the business after it started operating, and manag[ed] the business for the first several months of its operation."  Compl. ¶ 39.  Thus, the question of who enjoyed the benefits of Mr. Alemayehu's labor necessarily turns on the question of who owned the enterprise.  Of course, if Mr. Abere ran the restaurant as a sole proprietor, as he claims, *see* Countercl. at 1, then any and all services performed for the restaurant necessarily accrued to his personal benefit.  Indeed, D.C. law "makes no legal distinction between the identity of a sole proprietorship and its owner."  *Kopff v. Roth*, 2007 WL 1748918 at *1 n.3 (D.D.C. June 15, 2007) (citing *Pritchett v. Stillwell*, 604 A.2d 886, 889 (D.C. 1992) (holding that the identity of a sole proprietorship is "the same as that of its owner"); *see also* 65 C.J.S. Names § 13 (noting sole proprietorship and proprietor "are but two names for one person")).  Likewise, if Mr. Abere is running the business as a general partnership

with people other than Mr. Alemayehu, then again he can be held liable for any benefits conferred on the business because in D.C., partners are "liable jointly and severally for all debts, obligations, or other liabilities of the partnership." D.C. Code § 29-603.06.

But there are also circumstances under which Mr. Alemayehu would not be entitled to recover for services rendered to the business. Indeed, as described above, if the corporate entity were deemed to be running the business, then the benefits accrued to it, not Mr. Abere and, thus, Mr. Alemayehu would have no viable quantum meruit claim against him. Similarly, if Mr. Alemayehu were deemed to be a *de facto* partner of the business, then his services accrued, at least in part, to his own benefit. *See* D.C. Code § 29-604.01(b) ("Each partner shall be entitled to an equal share of the partnership profits."). And if that were the case, then he could not have expected to be paid for his services because, under D.C. law, "[a] partner shall not be entitled to remuneration for services performed for the partnership," except in certain situations not applicable here. *Id.* at § 29-604.01(k). Thus, to be successful on his claim, the finder of fact must necessarily determine that Mr. Abere was an owner of the business and that Mr. Alemayehu was not.

Although that theory may run counter to some of Mr. Alemayehu's other claims, it is well established that a plaintiff is allowed to plead in the alternative. *See McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013) (holding that a plaintiff may plead claims based on two opposing theories of liability under Federal Rule of Civil Procedure 8(d)(2) and that "a plaintiff 'need not use particular words to plead in the alternative as long as it can be reasonably inferred that this is what [it was] doing.'" (alteration in original) (citing *G-I Holdings Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 536–37 (S.D.N.Y. 2002))). For example, in *McNamara v. Picken*, two physicians decided to merge their practices and effectuate a merger by leasing shared office

space, sending out merger notifications to patients, and adding the plaintiff to the practice's bank account. *See McNamara v. Picken*, 866 F. Supp. 2d 10, 13–14 (D.D.C. 2012). Thereafter, the relationship between the parties soured and the plaintiff claimed that he and the defendant were equal partners and that the defendant had breached their oral partnership agreement. *See id.* Alternatively, the plaintiff claimed that he was an employee of the defendant and that the defendant had breached his employment agreement. *See McNamara*, 950 F. Supp. 2d at 128. The defendant moved to dismiss, arguing that the plaintiff could not claim that he was both an equal partner and an employee. *See McNamara*, 950 F. Supp. 2d at 128. The court disagreed and held that, under Federal Rule of Procedure 8(d)(2), plaintiffs may plead alternative theories of liability. *See id.* As in *McNamara*, while Mr. Alemayehu's primary theory seems to be that he is an owner of the restaurant enterprise and entitled to profits on that basis, his Complaint suggests that, even if he is not the owner, that he should still be granted relief. Indeed, the Complaint states that he is "entitled to 80% of the profit distributions dating back to the first week of the restaurant's operation or, *in the alternative*, the retirement of his outstanding investment and *payment for his services rendered*." Compl. ¶ 41; *see also McNamara*, 950 F. Supp. 2d at 128.

If Mr. Abere does in fact own the business and Mr. Alemayehu does not, then Mr. Alemayehu may very well have a claim for quantum meruit. Under the circumstances alleged in the pleadings, it would seem reasonable to expect Mr. Abere to have known that Mr. Alemayehu anticipated compensation in one form or another for his work. Indeed, Mr. Abere himself claims that Mr. Alemayehu was "employ[ed] as the manager of Amsterdam Café." Countercl. ¶ 24; *see also* Compl. ¶ 20 (alleging that Mr. Tilahun informed employees that Mr. Alemayehu "works for Defendants Abere and Bayabile"). And there is no reason to believe that Mr. Alemayehu was

conferring a benefit on the business gratuitously or officiously. Therefore, if Mr. Alemayehu did not have an interest in the restaurant enterprise, he has at least alleged sufficient facts to demonstrate that he has a plausible right to relief on his claim for quantum meruit. Based on the foregoing, the Court concludes that Mr. Abere is not entitled to judgment on the pleadings with respect to Mr. Alemayehu's quantum meruit claim.

## IV.  MR. ALEMAYEHU'S MOTION

The Court now turns to Mr. Alemayehu's motion. Like Mr. Abere, Mr. Alemayehu erroneously styles his motion as a motion to dismiss under Rule 12(b)(6) despite the fact that responsive pleadings have already been filed. However, unlike Mr. Abere, Mr. Alemayehu has alternatively moved for summary judgment and has attached materials outside of the pleadings. Because both parties rely on these materials, and both parties have had the opportunity to respond and have already taken discovery, the Court will treat Mr. Alemayehu's motion as a motion for summary judgment rather than a motion for judgment on the pleadings. *See Langley*, 677 F. Supp. 2d at 264 ("the Court finds that the Secretary's motion should in fact be construed as a motion for summary judgment rather than a motion for judgment on the pleadings (or a motion to dismiss)" because, "[i]n filing her motion, the Secretary attached various exhibits to her filing that both parties have relied upon in their briefing.").

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Mr. Alemayehu seeks summary judgment on each of Mr. Abere's five counterclaims. For the reasons stated below, the Court denies Mr. Alemayehu's motion.

### A. Breach of Contract (Count II)

The Court first considers Mr. Abere's breach of contract claim and finds that summary judgment is unwarranted. To establish a claim for breach of contract, a plaintiff must establish (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, and (3) a breach of that duty. *See Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Although decisions from the D.C. Courts frequently contain statements suggesting that a prima facie case for breach of contract also requires allegations of damages, it is settled in the District that nominal damages can suffice. *See Alston v. Flagstar Bank, FSB*, 609 F. App'x 2, 3 (D.C. Cir. 2015).

Here, Mr. Abere claims that he and Mr. Alemayehu entered into a rather odd employment agreement whereby Mr. Abere would continue to own and operate the Amsterdam Café, but, if Mr. Alemayehu paid $100,000, Mr. Abere would make him the manager of the restaurant and compensate him with 80% of the business's net profits. *See* Countercl. ¶ 22. Mr. Abere claims that Mr. Alemayehu violated this agreement when he failed to pay the full consideration amount of $100,000, as he asserts was required under the contract. *See* Countercl. ¶¶ 22, 41–44. In addition, Mr. Abere suggests that Mr. Alemayehu breached the duty of good faith and fair dealing implicit in the agreement when he failed to pay taxes, invoices, and employee salaries and failed to account for approximately $110,422.81 in gross receipts while he was serving as manager of the restaurant. *See* Countercl. ¶¶ 28, 41–44.

In his motion, Mr. Alemayehu argues that he did not breach the contract by failing to pay the requisite consideration because the parties had, in fact, agreed to lower the price of the initial investment amount to $80,000, which Mr. Alemayehu paid. *See* Pl.'s Mot. at 12. But, this is not supported by the record currently before the Court. There is no dispute that Mr. Alemayehu paid a total of $80,000—$50,000 directly to Mr. Abere and approximately $30,000 to Mr. Abere's landlord. *See* Abere Dep. at 61:22–62:4, ECF No. 28-10 ("From our agreement, I was supposed to receive [$]100,000, and from the [$]100,000 I receive[d] [$]50[,000] for me and [$]30[,000] – about [$]30[,000]-something to the landlord."). But there is no evidence in the record demonstrating any agreement between the parties to lower the contract price from $100,000 to $80,000. Although Mr. Alemayehu cites a deposition transcript that he urges supports his argument, he fails to provide the Court with that transcript. Pl.'s Mot. at 12. Mr. Alemayehu also points to a share purchase agreement between the parties, which states that "Mr. Neway [Alemayehu] and Mr. Bekalu [Bayabile] will make a share purchase payment of $100,000 to Mr.

Belay [Abere]." Pl.'s Reply at 6–7, ECF No. 29. Mr. Alemayehu argues that this language

demonstrates that the payment of $100,000 was to be borne by Mr. Alemayehu and Mr. Bayabile

together—not Mr. Alemayehu alone. Pl.'s Reply at 7. While that may be true, it does not

demonstrate how much each person was to pay. Thus, on its face, this document does not

demonstrate that Mr. Alemayehu was obligated to pay only $80,000. Mr. Alemayehu also points

to a purported operating agreement, which states that Mr. Alemayehu's contribution would be

$80,000 and Mr. Bayabile's investment would be $20,000. Pl.'s Reply at 7. But this agreement

is not signed by Mr. Abere, and he cannot be deemed to be bound by its terms without some

evidence of his assent. Therefore, Mr. Alemayehu has not demonstrated that he was only

required to pay $80,000 under the contract with Mr. Abere and thus he fails to meet even his

initial burden of showing an absence of a genuine material fact.

Mr. Alemayehu next argues that he is entitled to summary judgment because, regardless

of whether he breached any contractual duties owed to Mr. Abere, Mr. Abere cannot make a

showing of damages. The basis of Mr. Alemayehu's argument is not that the alleged breaches

did not injure the *business*.[4] Rather, he argues that whatever injuries the business sustained were

not injuries shared by Mr. Abere. This is so because, as Mr. Alemayehu contends, "there is no

dispute that Mr. Abere did not pay the rent or contribute any of his personal funds to the

business," *see* Pl.'s Mot. at 11, and, because the business had not yet become profitable, Mr.

Abere cannot claim to have any interest in undistributed profits. This argument is flawed in

multiple respects.

---

[4] It is logical to presume at this state of the litigation that if, as alleged, Mr. Alemayehu
diverted business funds to pay a personal debt and failed to pay the business's legitimate
expenses, the business would have been injured by those actions and inactions.

First and foremost, it is important to recognize that, even if Mr. Alemayehu was right—that Mr. Abere did not share the injuries suffered by the business—this would not preclude Mr. Abere's breach of contract claim. "[T]he settled rule in the District is that '[e]ven where monetary damages cannot be proved, a plaintiff who can establish a breach of contract is entitled to an award of nominal damages.'" *Alston*, 609 F. App'x at 3 (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 753 (D.C. 2013)). For that reason alone, Mr. Alemayehu's argument for dismissal must fail.

But Mr. Alemayehu's argument is also wrong for another reason. Answering the question of whether Mr. Abere made capital contributions to the business does not resolve the issue of whether Mr. Abere was personally injured by Mr. Alemayehu's actions. Indeed, whether Mr. Abere was injured turns instead on the ownership structure of the business. If Mr. Abere is the sole proprietor, as he contends, any injury to the business is also an injury felt by him because the identity of a sole proprietorship is "the same as that of its owner." *Pritchett*, 604 A.2d 889; *see also York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 403 (7th Cir. 2011) (noting that a sole proprietorship and its proprietor are "two names for the same person," and, when bringing suit, the name of "[e]ither will do; both are better"). While the contribution or non-contribution of personal funds to the business might have some probative value on the issue of ownership, there is certainly no rule that requires sole proprietors to supply funds to their own ventures. Thus, Mr. Abere's failure to contribute personal funds to the business is not a "material" fact for purposes of summary judgment because resolving that question alone does not necessarily affect the substantive outcome of his claim. Furthermore, there is at least a genuine dispute as to the operative question of whether Mr. Abere was the sole owner of the restaurant. Indeed, Mr. Abere testified that he owned the business and had never represented to

anyone that the restaurant was jointly owned. *See* Abere Dep. at 69:3–9, ECF No. 29-9. Thus,

Mr. Abere's failure to contribute his own funds to the venture does not entitle Mr. Alemayehu to

summary judgment.

## B. Unjust Enrichment (Count IV)

The Court next considers Mr. Abere's unjust enrichment claim. Unjust enrichment is "an

obligation which the law creates, in the absence of any agreement, when and because the acts of

the parties or others have placed in the possession of one person money, or its equivalent, under

such circumstances that in equity and good conscience he ought not to retain it . . . [d]uty, and

not a promise or agreement or intention of the person sought to be charged, defines it." *Jordan

Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005) (citing

*Miller v. Schloss*, 113 N.E. 337, 339 (N.Y. Ct. App. 1916)). Under D.C. law, "unjust enrichment

has three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant

accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the

plaintiff the value of the benefit." *Sununu v. Philippine Airlines, Inc.*, 792 F. Supp. 2d 39, 53–54

(D.D.C. 2011) (internal citation omitted). Here, Mr. Abere claims that Mr. Alemayehu was

unjustly enriched when he diverted or retained over $110,422.81 from the restaurant's gross

receipts. *See* Countercl. ¶¶ 28, 50–52.

Mr. Alemayehu again argues that he is entitled to judgment because Mr. Abere did not

contribute funds to the business venture and because the business was not yet profitable such that

Mr. Abere might have claim to a undistributed profits. *See* Pl.'s Mot. at 12–13; Pl.'s Reply at 8–

9. In essence, Mr. Alemayehu argues that Mr. Abere cannot claim to have conferred a benefit on

Mr. Alemayehu when the alleged monies actually came from the business. But, once again, one

of the central disputes in this case is over who owns the business. If Mr. Abere owns the

business as a sole proprietorship, as he claims, then any money taken from the coffers of the restaurant is money taken out of Mr. Abere's pockets. Because the ownership issue is disputed, Mr. Alemayehu cannot obtain summary judgment merely by arguing that he took money from the business, not Mr. Abere himself.

**C. Breach of Fiduciary Duty (Count I) and Breach of Agency Contract (Count III)**

Finally, the Court addresses Mr. Abere's breach of fiduciary duty and breach of agency contract claims. Mr. Abere claims Mr. Alemayehu owed him fiduciary duties as an employee of the restaurant or duties based on some agency contract.[5]  Mr. Alemayehu allegedly breached

---

[5] This Court has struggled somewhat to understand what precise legal theory Mr. Abere means to assert under Count III of his Counterclaim, but for purposes of this decision, the Court assumes he means to assert a claim for breach of either an express or implied-in-fact contract. In his Counterclaim, Mr. Abere labels the claim as one for "Quasi-Contract/Breach of Agency Contract." This is rather confusing. As the D.C. Court of Appeals has explained, "'Breach of quasi-contract' is really a euphemism for a claim of unjust enrichment; a quasi-contract is not an agreement one can 'break.'" *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1221 n.2 (D.C. 2005). But the facts alleged do not seem to fit with a theory of unjust enrichment. The only conduct challenged under that Count is Mr. Alemayehu's unauthorized signature on the Settlement Agreement. *See* Countercl. ¶ 47. As the name suggests, however, a claim for unjust enrichment requires some benefit to have been conferred upon the defendant, *Sununu v. Philippine Airlines, Inc.*, 792 F. Supp. 2d 39, 53–54 (D.D.C. 2011), but here, the Counterclaim offers no reason to believe that Mr. Alemayehu was in any way "enriched" by signing the document. Mr. Abere's use of the term "agency contract" might also connote breach of fiduciary duties. But, of course, Mr. Abere already asserts a claim for breach of fiduciary duties based on this very same conduct. Thus, in construing the Counterclaim broadly and so as not to be duplicative of the breach of fiduciary duty claim, the Court assumes that Mr. Abere means to assert a claim for breach of contract, either express or implied-in-fact. Whether the contract is express or implied-in-fact makes no difference because an implied-in-fact contract is a "true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Vereen v. Clayborne*, 623 A.2d 1190, 1193 (D.C. 1993) (quoting *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973)).

those duties when he forged Mr. Abere's signature on the Settlement Agreement with Mr. Abere's sub-tenant, Wilson Concepts and its proprietor, Garnell Wilson.[6]

Mr. Alemayehu argues that he is entitled to summary judgment on these claims because Mr. Abere cannot make a showing that he suffered any harm.[7] Mr. Alemayehu argues that his alleged unauthorized signing of the Settlement Agreement[8] could not have harmed Mr. Abere because the Settlement Agreement expressly conditioned its enforcement on events that never came to pass. *See* Pl.'s Mot. Thus, according to the argument, the Settlement Agreement did not actually release any claims that Mr. Abere might have had against Wilson Concepts and/or Mr. Wilson and, therefore, Mr. Abere cannot claim to have been harmed by the alleged unauthorized signing of that document.

Unfortunately, this argument raises a complication. Specifically, this argument calls into question not only the rights of Mr. Abere, but also Wilson Concepts and Mr. Wilson, who are not currently parties to this lawsuit. Although no one has moved to join Wilson Concepts and Mr. Wilson and neither have sought to intervene, courts have an "independent duty to raise a Rule

---

[6] For the fiduciary duty claim, Mr. Abere also alleges that while Mr. Alemayehu was acting as the restaurant's manager, he failed to pay various expenses, including taxes, employee salaries, and vendor invoices and was unable to account for over $110,422.81 in gross receipts for the business. Mr. Alemayehu again rehashes the argument that Mr. Abere did not contribute any funds to the business and, therefore, he cannot have suffered any damages. Again, this argument fails for the same reasons described *supra*. But the fact that Mr. Abere alleges that Mr. Alemayehu was his employee, rather than a business partner, yet was responsible for paying all of the business's expenses and was only paid as a percentage of profits, raises a host of questions. But, ultimately, a jury will determine what is reasonable.

[7] Although it is true that a claim for breach of fiduciary duties requires a showing of injury, *see Dorsey v. American Express Co.*, 680 F. Supp. 2d 250 (D.D.C. 2010), Mr. Alemayehu's argument is inapt for the breach of agency contract claim because, as described above, a plaintiff in the District may proceed on a breach of contract claim even if they only seek nominal damages. *See Alston*, 609 F. App'x at 3.

[8] Mr. Alemayehu denies that he lacked authority to sign the document on Mr. Abere's behalf.

19(a) issue *sua sponte*." *Cook v. FDA*, 733 F.3d 1, 6 (D.C. Cir. 2013) (internal quotation and alteration omitted); *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008) ("A court with proper jurisdiction may [] consider sua sponte the absence of a required person and dismiss for failure to join."). Rule 19 is intended to "promote[ ] fair treatment of nonparties in certain circumstances where their interests, and particularly their due process rights, are at risk from litigation between others." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 464 (D.C. Cir. 2017). Under that Rule, "[a] person . . . *must* be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may, as a practical matter impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19 (a)(1)(B) (emphasis added). If the court finds that a "required" person has not been joined, it "*must* order that the person be made a party."[9] Fed. R. Civ. P. 19(a)(2) (emphasis added).

In this case, there is good reason to believe that Wilson Concepts and Mr. Wilson may be required parties. Although "Rule 19 precedent is admittedly scant," *Nanko Shipping, USA*, 850 F.3d at 465, in "actions involving contractual rights, courts have frequently found that the parties to a contract are required parties within the meaning of Rule 19," *Eco Tour Adventures, Inc. v.*

---

[9] If a necessary party cannot be joined—for instance, if joinder would destroy diversity and deprive the court of subject-matter jurisdiction—the court must examine the factors enumerated in Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." "The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

*Zinke*, 249 F. Supp. 3d 360, 390 (D.D.C. 2017) (collecting cases); *see also* 5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 1613 (3d ed. 2017) ("In cases seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract, all parties to the contract probably will have a substantial interest in the outcome of the litigation and their joinder will be required."). Here, the argument advanced by Mr. Alemayehu concerns the enforceability of the Settlement Agreement with Wilson Concepts and Mr. Wilson. If the Court were to give credence to that argument, it would necessarily "impair or impede" their interests in that agreement. Yet, those contractual rights are being considered without their participation.[10] Thus, it appears that their rights are inextricably bound up in the claims and defenses concerning Mr. Abere's claims.

However, questions of joinder under Rule 19 "can be complex, and determinations are case specific." *Republic of Philippines*, 553 U.S. at 863. And, in this case, there may be reasons why joining Wilson Concepts and Mr. Wilson is either unnecessary or unfeasible. For example, jurisdiction in this suit is founded upon diversity of citizenship under 28 U.S.C. § 1332 and it is possible that joining one or both of them might destroy that diversity. But, at this stage, the parties have in no way addressed the question of whether they are necessary to this suit and the record is not sufficiently well developed such that the Court might adequately assess this question on its own. For that reason, the Court declines to address Mr. Alemayehu's argument at this time. Instead, it will order the parties to provide supplemental briefing explaining whether, in light of Mr. Alemayehu's claims concerning the settlement agreement, joinder of Wilson

---

[10] The record is silent as to the position of Wilson Concepts or Mr. Wilson as to the viability of the release. Presumably, it is possible that they agree with Mr. Alemayehu given that they subsequently entered into a contract concerning the liquor license; but it did not address the settlement of Mr. Abere's purported back-rent claim.

Concepts and Mr. Wilson as parties to this lawsuit is required under Rule 19 at this stage in the litigation.  *See Eco Tour Adventures, Inc.*, 249 F. Supp. 3d at 391 (on motion for summary judgment, ordering parties to submit supplemental briefing addressing whether third-parties were required to be joined under Rule 19 based upon their contractual interests).

## V.  CONCLUSION

For the foregoing reasons, Mr. Abere's Motion to Dismiss (ECF No. 25) is **DENIED**, and Mr. Alemayehu's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 26) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 26, 2018                              RUDOLPH CONTRERAS
                                                       United States District Judge